[No. 7462–1–II.   Division Two.   June 10, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. RICKY
ALLEN COUCH, *Appellant.*

*Elizabeth Penoyar* and *Penoyar & Penoyar,* for appellant (appointed counsel for appeal).

*Jeff Campiche, Prosecuting Attorney,* and *Douglas E. Goelz, Deputy,* for respondent.

REED, A.C.J.—Ricky Allen Couch appeals his conviction of second degree burglary. Couch presents only two issues: (1) whether it was constitutional error to fail to instruct the jury respecting the elements of second degree burglary without specifying and defining the crime which Couch intended to commit within the building; and (2) whether the evidence was sufficient to support the verdict of guilt. We affirm.

Vern and Cheryl McKay owned the Brooklyn Tavern in Brooklyn, Pacific County. They lived 5 miles from the tavern. Ross Millard, the former owner, lived next door. The tavern was on a main road, the "front" door was on one side of the building, and a "back" door and principal parking area were on the other side. The tavern itself was on a site that sloped away from the road down to a creek or stream, and on the downhill side it rested on blocks. Another creek ran alongside. There was a space beneath the tavern that was, at points, high enough in which to stand upright. Normally there was aluminum skirting around this basement, but at the time of the charged crime, some of the skirting had been removed. Inside the tavern, an open flow of water ran along the bar and drained through a basement catching tank to an outlet. A trapdoor behind the bar gave access to the basement.

The McKays testified that in the late evening of June 6, 1983, when the tavern was closed, Millard telephoned and warned them that someone was inside the tavern. They immediately drove to the tavern. When they arrived, they saw, parked across the road from the tavern, an automobile which they recognized as that of Ricky Couch, who lived

nearby. Mrs. McKay entered the "front" door, while Mr. McKay went to the "back" door but did not enter. As Mrs. McKay entered, she heard someone moving about inside, and then the sound of the trapdoor slamming shut. Outside, Mr. McKay heard the sound of movement in the basement. Mrs. McKay called out that the intruder was moving to the front of the building and Mr. McKay moved around to the front. Mrs. McKay went outside to a front corner and saw defendant Couch climbing over a fence next to the tavern. Mr. McKay did not see anyone come out from under the building, but when he came around to the front of the tavern he recognized defendant Couch grappling in the road with Millard. Mrs. McKay, too, recognized Couch. Couch shook Millard off, got in his car and drove away rapidly. Mr. McKay was armed with a shotgun, and he shot at Couch's tires as Couch escaped.

Upon reentering the tavern, the McKays found no evidence that anything had been disturbed or removed, but did find that a nail used to secure the trapdoor had been moved. They later discovered Couch's automobile parked nearby. There were what appeared to be bullet holes in the fender. The next day they looked around in the basement beneath the trapdoor, but found nothing except unidentifiable shoe marks in the dust.

The State could not find Millard to testify. Couch testified that he had been in the vicinity but that he had not been in the tavern at all. He stated that he had left a friend's house a few doors away, saw that he was very low on gasoline, and parked across the street from Millard's house and the tavern in order to siphon gasoline from Millard's automobile. Hearing Millard come out of his house, he ran to hide next to the creek running down the slope next to the tavern. When Millard went back inside, Couch hid his siphon and gasoline can, and when the McKays arrived he escaped to his car over the fence as described by Mrs. McKay.

Couch appeals his jury conviction.

Although Couch took no exception to the jury instruc-

tions either given or refused, he first contends that the trial court committed error of constitutional magnitude by failing to inform the jury of the State's burden of proving, as an element of second degree burglary, the specific crime he intended to commit in the tavern. *See State v. Johnson,* 100 Wn.2d 607, 674 P.2d 145 (1983).

■ This contention is without merit. The rule of *Johnson* is not applicable retroactively to convictions, such as Couch's, that predate the decision in *Johnson. State v. Anderson,* 42 Wn. App. 659, 663, 713 P.2d 145 (1986). We note in passing that the opinion in *Johnson* has been overruled as to this requirement. *State v. Bergeron,* 105 Wn.2d 1, 15, 711 P.2d 1000 (1985).

Couch's second argument on appeal is that the evidence was insufficient to establish two of the elements of second degree burglary, the unlawful entry or remaining unlawfully in a building, and the intent to commit a crime within.

■ The question upon inquiry into the sufficiency of the evidence to support a verdict of guilty is not whether the reviewing court believes that the evidence at trial established guilt beyond a reasonable doubt, but rather whether, when the evidence is viewed most favorably to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980) (citing *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)).

■ Couch argues that because he was not seen in the tavern, or coming out from its basement, the evidence that he entered the tavern is entirely circumstantial. Further, he argues that, because nothing was found to have been disturbed or taken from the tavern, a rational trier of fact could not have found that he had been inside. Couch argues that he could be found guilty only by an impermissible "pyramiding of inferences" from the circumstantial evidence alone, to establish the essential elements of the charged crime. *State v. Weaver,* 60 Wn.2d 87, 88, 371 P.2d 1006 (1962). The principle upon which this rule was based

was that "[w]hile a conviction may be sustained solely on circumstantial evidence, the circumstances proved must be unequivocal and inconsistent with innocence." (Footnote omitted.) *State v. Weaver,* 60 Wn.2d at 88. This principle has been overruled: circumstantial evidence is not necessarily less reliable than direct evidence; even if the only evidence of guilt is circumstantial, the jury need only be convinced of guilt beyond a reasonable doubt and the evidence need not be inconsistent with a hypothesis of innocence. *State v. Gosby,* 85 Wn.2d 758, 766–67, 539 P.2d 680 (1975); *State v. Gerard,* 36 Wn. App. 7, 10, 671 P.2d 286 (1983), *review denied,* 100 Wn.2d 1035 (1984).

Couch argues that the evidence of what the McKays heard and saw, when viewed most favorably to the State, still leaves a doubt that *anyone* had entered the building. However, a rational trier of fact could have decided that such a doubt was not reasonable. Therefore, the circumstantial evidence that Couch was the person who had entered, and then hurriedly left the building, is sufficient to support the verdict.

In addition, Couch suggests that, even if there is persuasive circumstantial evidence that he was *under* the tavern, a reasonable jury did not have sufficient evidence that he unlawfully *entered* a *building,* as it was required to find in order to find him guilty of second degree burglary. RCW 9A.52.030(1). He is not correct. Before the Washington Criminal Code was enacted in 1975, prior law defined "building" for the purposes of the burglary statutes in a somewhat restrictive manner; however, burglary was defined to include the breaking and entering of "any building or part thereof, or . . . other structure". Former RCW 9.19.020. Under that statute, "other structure" included a fence "of such a nature that it is erected mainly for the purpose of protecting property within its confines and is, in fact, an integral part of a closed compound". *State v. Roadhs,* 71 Wn.2d 705, 708–09, 430 P.2d 586 (1967). The Washington Criminal Code as reenacted, far from abandoning this judicial construction, incorporated it in the

present definition of "building" for the purposes of the burglary statutes: "'Building', in addition to its ordinary meaning, includes any dwelling, fenced area . . . or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods . . ." RCW 9A.04.110(5).

The undisputed evidence demonstrates that the space beneath the business floor of the tavern was customarily fully enclosed. Because of plumbing repairs, a portion of that skirting had been removed, and an unobstructed entry into the basement was possible. The catching tank for the stream that was diverted through the tavern for the use[1] of its patrons was placed in this basement, and access to that tank was gained directly through the floor above. Therefore, even though the basement was not an area that patrons used directly, it was clearly an enclosed area, associated with the building in the usual sense, that was used in connection with the business of the tavern. Therefore, even if the jury had found that the evidence was sufficient to show that Couch had entered the basement only, that evidence would have been sufficient to support a finding that he entered a "building."

Similarly, Couch's attempt to distinguish between evidence of his being in the basement and evidence of his entering the upper floor would be to no purpose, even were we to believe that the basement was not part of a "building" for the purposes of the second degree burglary statute. First, Mrs. McKay testified that she heard someone moving about in the tavern proper. Second, based upon the testimony of Mrs. McKay that she heard the trapdoor shut, the jury would have been justified in concluding that someone beneath had intruded into the business floor enough to raise the door that she heard fall shut. "The word 'enter' when constituting an element or part of a crime, shall include the entrance of the person, or the insertion of any

---

[1]Apparently the flow of water did not serve any aesthetic purpose. Rather, it was used as a receptacle for cigarette butts and such.

part of his body". RCW 9A.52.010(2). Therefore the evidence could justify a rational jury's conclusion that Couch "entered" the upper floor of the tavern, even if he never set a literal foot there.

Finally, Couch argues, the evidence was insufficient to support a finding that he intended to commit a crime within the tavern. Again, he is incorrect.

█ Intent may be inferred from all the facts and circumstances. *State v. Bergeron,* 105 Wn.2d at 19. Although intent may not be inferred from patently equivocal conduct, it may be inferred from conduct that clearly indicates such intent as a matter of logical probability. *State v. Lewis,* 69 Wn.2d 120, 124, 417 P.2d 618 (1966).

Here, defendant's actions were not patently ambiguous. He entered unlawfully, having no consent or permission; he entered surreptitiously via an unusual and concealed route; he took flight immediately upon discovery, and offered a lame or implausible explanation for being in the area. There was sufficient evidence on this issue.

Judgment of conviction is affirmed.

PETRICH and ALEXANDER, JJ., concur.