[No. 18778-3-I.  Division One.  December 21, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. ALBERT
JAMES BASSETT, *Appellant*.

*Anna Mari Sarkanen* of *Washington Appellate
Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Cassandra
Noble* and *K. Garl Long, Deputies,* for respondent.

SCHUMACHER, J.*—Albert James Bassett (also known as
Adamson) appeals his conviction for attempted second

---

*Judge John W. Schumacher is serving as a judge pro tempore of the Court of
Appeals pursuant to RCW 2.06.150.

degree burglary, in violation of RCW 9A.52.030 and 9A.28-.020. He contends that the trial court erred in (1) instructing the jury on the statutory inference of intent to commit a crime within a building, and (2) instructing the jury in a misleading manner that allowed it to infer intent to commit a crime from an unlawful entry into the victim's yard. We find no error and affirm.

Judy Borgford testified that on the morning of January 24, 1986, she was resting in her second floor bedroom after having not slept well the night before. She received a phone call from her husband at 8:30 a.m. and returned to bed. The phone rang again between 9:20 and 9:30 a.m. but she did not answer it. At approximately 9:45 a.m. she heard her front doorbell ring. She did not go to the door. She then heard her back doorbell ring and, again, did not get out of bed. Next she heard a noise "like a knock or a bang"[1] that she could tell was connected with her house.

At that point Borgford got up, dressed and came down to the first floor of her home. She entered the dining area, picked up her telephone to call 911 and found the telephone was dead. She then went to an outside balcony off the dining room and leaned over to see a man prying with an object against her basement door.

Borgford then left through another door and called the police from a neighbor's home. While on the phone with the dispatcher she saw the man walk out from her lower yard onto the street. She later identified Adamson as that man.

When the police arrested Adamson, he was carrying a pair of wire cutters and a small screwdriver. They observed that the phone line next to a door of the house had been cut and that the basement door had fresh gouge and chip marks around its windows. Glass had been broken out of a window in the basement door. Several larger pieces of glass were on the ground several feet away from the door and some smaller pieces were just below the door. One of the

---

[1] She further described the noise "like a banging or a gouging. . . . It wasn't a rapping. A chipping or something like that."

pieces of glass remaining in the window frame showed freshly disturbed dust and smudges on both sides. The smudges were identified as fingerprints but were not distinct enough to be matched to known prints.

The defense produced a crab fisherman who testified he had employed Adamson for about 1 week in the latter part of January 1986. He recognized the wire cutters as a pair Adamson had used on the boat to cut wires for stringing bait. He also testified Adamson used a small screwdriver on the boat to steady an oar lock. The tools belonged to Adamson and he took them with him when he left that employment.

Appellant testified also that he used the wire cutters and the screwdriver while crabbing. He further testified he had been seeking odd jobs when he approached the Borgford home. After ringing the doorbell and receiving no response, he thought he heard noises coming from the backyard, so he walked through the garage to the back door and rang that bell also. Again he received no response so then walked further around the house to the basement door. He testified that he started to knock there but then noticed a broken window and left. He denied cutting any phone wires and denied attempting to break into the house.

## I
### INFERENCE OF INTENT INSTRUCTION

Adamson assigns error to the giving of instruction 9, which reads as follows:

A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein unless such entering or remaining shall be explained by evidence satisfactory to the jury to have been made without such criminal intent. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

Instruction 9.[2]

Adamson argues that it was error to give this instruction since the State failed to prove that Adamson entered or remained in Borgford's house. He relies on *State v. Ogden*, 21 Wn. App. 44, 584 P.2d 957 (1978), *review denied,* 91 Wn.2d 1013 (1979), which was also an attempted burglary prosecution. In an instruction in *Ogden* the trial court modified the statutory language of RCW 9A.52.040 in a way which allowed the jury to make the inference of intent based on a mere *attempt* to enter or remain unlawfully in a building. *Ogden,* 21 Wn. App. at 46, 49. The *Ogden* court held it was improper to give such an instruction in *that* attempted burglary case, as distinguished from a burglary case, because of the improper modification of the statutory language[3] and because there was no evidence that the defendants had either entered or remained unlawfully in a building.

*Ogden* does not stand for the proposition, however, that an inference of intent instruction can never be given in an attempted burglary prosecution. Furthermore, this case is distinguishable from *Ogden* on each of the grounds on which that case rested. First, the instruction herein was not based on an improper redraft of the statute. Secondly and most importantly, there is evidence in this case of unlawful entry. As the trial court stated:

Based on the testimony of the victim and the description of the banging noise, the taking of glass, the glass being

---

[2]Instruction 9 is WPIC 60.05, which is based on RCW 9A.52.040, the inference of intent statute. RCW 9A.52.040 reads:
Inference of intent. In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

[3]RCW 9A.52.040 does not authorize such an instruction in the case of an attempted entry. *State v. Bergeron,* 38 Wn. App. 416, 420, 685 P.2d 648 (1984), *aff'd,* 105 Wn.2d 1, 711 P.2d 1000 (1985); *Ogden,* 21 Wn. App. at 49.

two to three feet away from the door, removal circumstantially could be interpreted as a breaking and entry.

Although Adamson disputes the court's conclusion that there was sufficient evidence to support a finding of entry, we agree with the trial court.

■ The word "enter" is defined in RCW 9A.52.010(2) as including "the entrance of the person, or the insertion of any part of his body, or any instrument or weapon held in his hand and used or intended to be used to threaten or intimidate a person or to detach or remove property." In *State v. Couch,* 44 Wn. App. 26, 720 P.2d 1387 (1986), the court found that evidence indicating that a trap door from a basement level had been pushed open could justify a rational jury's conclusion that the defendant "entered" the upper floor of the building. *Couch,* 44 Wn. App. at 31–32. In *State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985), on the other hand, a finding of no entry was upheld where the defendant threw a rock through a window and slid it open. *Bergeron,* 105 Wn.2d at 3, 19.

Here, evidence of the insertion of a finger to remove pieces of glass is sufficient to justify the court's conclusion that a rational jury could find that Adamson unlawfully "entered" the Borgford home. Under these circumstances, therefore, the giving of the inference of intent instruction was not error.

## II
### Sequence of Instructions

Adamson also assigns error to the giving of instructions 10 and 11. They read as follows:

A person enters or remains unlawfully in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain.

Instruction 10.

The term premises includes any building, dwelling, or any real property.

Instruction 11.

Adamson argues that these instructions were improperly placed within the instructions as a whole. They follow instruction 8, which defined second degree burglary, and instruction 9, quoted and discussed above. Instructions 8 and 9 refer only to entering or remaining unlawfully "in a building." Appellant contends that the reference to, and defining of, "premises" in instructions 10 and 11, directly following the instructions on second degree burglary, were misleading to the jury in that they imply that an intent to commit a crime within the Borgford house could be found from an unlawful entry "upon premises," *i.e.,* the Borgford yard. Adamson proposed two instructions essentially identical to instructions 10 and 11, but argued that they should be placed following instruction 14, the instruction on the lesser included crime of criminal trespass, since the term "premises" applied only to criminal trespass.[4]

■ ■ The doctrine of invited error precludes a party from challenging an instruction on appeal that the party requested at trial. *See State v. Boyer,* 91 Wn.2d 342, 345, 588 P.2d 1151 (1979); *State v. Miller,* 40 Wn. App. 483, 486, 698 P.2d 1123, *review denied,* 104 Wn.2d 1010 (1985). Moreover, instructions are sufficient if they (1) correctly state the law, (2) are not misleading, and (3) permit each party to argue its theory of the case. *State v. Mark,* 94 Wn.2d 520, 526, 618 P.2d 73 (1980).

Since he proposed identical instructions, Adamson may not challenge the giving of instructions 10 and 11. In any event, his objections as to their placement are meritless. First, the jury in this case was instructed, pursuant to WPIC 1.02, to "consider the instructions as a whole", and

---

[4]Instructions 10 and 11 were given to permit the State to argue its alternative theory of the case, which was that if the jury did not find an "entry" into the building, that it could still infer intent to commit a crime from Adamson's unlawful entry onto the Borgford "premises" together with his actions cutting the phone wires, chipping at the door, and breaking the window glass. *See Bergeron,* 105 Wn.2d at 19–20 (intent may be inferred from the circumstances surrounding an act, even in attempt prosecutions). These actions, argued the State, constituted a "substantial step" (defined at instruction 7) toward the commission of the crime of second degree burglary and therefore constituted an attempt.

that "[t]he order in which these instructions are given has no significance to their relative importance." Instruction 1.

Further, the instructions accurately stated the applicable law in defining "premises" and the phrase "enters or remains unlawfully." *See* RCW 9A.52.010(1), (3). They were not misleading, since at no point do they imply that being "upon premises" is equivalent to being "in a building." Nothing in these instructions prevented Adamson from arguing his theory of the case, that he did not "enter" the Borgford home, that his entry onto the Borgford premises was lawful,[5] and that the inference of intent to commit a crime should not be applied.

Finally, Adamson argues that instruction 11 was faulty when read together with instruction 16. Instruction 16 reads as follows:

The term premises as used in Criminal Trespass includes any real property.

Adamson argues that the limited definition of premises in instruction 16 was confusing to the jury since the prior definition of premises in instruction 11 included "any building, dwelling, or any real property." Again, he argues that this implied to the jury that the burglary inference of intent could be made from a mere entry into the yard. However, the insertion of the term "real property" in instruction 11 was necessary to permit the State to argue its "substantial step" theory of attempt.

For all of the above reasons, Adamson's challenge to instructions 10 and 11 is without merit. We affirm.

COLEMAN and PEKELIS, JJ., concur.

Review denied by Supreme Court April 5, 1988.

---

[5]Or, if not lawful, the entry to the yard constituted only the lesser included offense of criminal trespass.