132 P.3d 737 (2006)
132 Wash.App. 400
STATE of Washington, Respondent,
v.
Ronnie Keith JOHNSON, Appellant.
No. 31830-0-II.
Court of Appeals of Washington, Division 2.
March 7, 2006.
Publication Ordered April 18, 2006.
Mary Katherine Young High, Reed Manley Benjamin Speir, Attorneys at Law, Tacoma, WA, for Appellant.
Kathleen Proctor, Pierce County Prosecuting Attorney Office, Tacoma, WA, for Respondent.
*738 QUINN-BRINTNALL, C.J.
¶ 1 Ronald Johnson appeals his conviction for second degree burglary, arguing that because the garage he unlawfully entered was missing its overhead door, that it is not a building as that term is used in the statutory definition of burglary. Because the statutory definition of a building is broad enough to include the garage in this case and the State presented sufficient evidence to allow a rational jury to find beyond a reasonable doubt that the garage belonging to Andria Simcoe and her husband is a building, we affirm Johnson's conviction.

FACTS
¶ 2 On September 16, 2003, Simcoe saw a man she did not know walking along her driveway, towards the street and away from her garage. The man was carrying tools she recognized as hers. She normally stored the tools inside the garage; she later discovered they were no longer there. Simcoe identified Johnson as the man she saw walking away from her garage carrying her tools. Johnson did not have permission to enter the garage or take the tools.
¶ 3 The garage was not attached to the house.[1] The Simcoes stored tools, lawn equipment, and personal belongings in the garage. The garage was a permanent structure, built in the same wood-framed style as the house. It had a concrete floor, a roof, and four sides. The front side had an opening for a vehicle garage door, but no door was installed. This meant that the garage was not and could not be fully enclosed. Because of the missing door, the garage was enclosed on three sides but open on the fourth like a shop or a bay.
¶ 4 The State charged Johnson with second degree burglary and third degree theft. Johnson unsuccessfully moved to dismiss the charges prior to trial, arguing that because the missing garage door meant that the garage could not be secured, it was not a building as that term is used in the second degree burglary statute.
¶ 5 At trial, the trial court rejected the defense definition of building[2] and gave the jury a standard jury instruction: "Building, in addition to its ordinary meaning, includes any dwelling, fenced area, vehicle, railway car, cargo container or any other structure used mainly for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods." Clerk's Papers (CP) at 58; see 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.05, at 24 (2d ed.1994). The parties argued to the jury whether the garage met that definition.
¶ 6 The State also asked that the court's elements instruction for second degree burglary omit the means of unlawfully remaining. The defense acquiesced in the State's request to omit the "or remaining" language, but the court inadvertently included "remaining" in element (2), the intent element.[3] CP at 48.
*739 ¶ 7 The jury convicted Johnson as charged, and the court imposed a standard range sentence of 68 months for the burglary and suspended a 12-month sentence on the third degree theft conviction. Johnson appeals his burglary conviction only.
¶ 8 On appeal, Johnson's counsel contends that the State failed to present sufficient evidence to support the jury's verdict finding him guilty of burglary because the Simcoes' garage was not a building. He contends that without a garage door, the garage had only three complete sides and was, therefore, not a building as a matter of law. Alternatively, he argues that the statutory definition of building is ambiguous.
¶ 9 Johnson's counsel also argues that he was deprived of his right to a unanimous jury because the instructions allowed individual jurors to convict him under either the unlawful entry or the unlawful remaining means of committing burglary.
¶ 10 In his pro se Statement of Additional Grounds for Review (SAG),[4] Johnson raises a cluster of claims all premised on the notion that the detached garage was a unit of a multi-unit building, a unit that was not a "building" because it was not "separately secured." He also argues that the trial court violated his right to a speedy trial, that his counsel was ineffective for failing to subpoena witnesses, and that the State committed misconduct during closing argument.

ANALYSIS

DEFINITION OF BUILDING
¶ 11 We review the meaning of a statutory definition de novo, as an issue of law. State v. Wentz, 149 Wash.2d 342, 346, 68 P.3d 282 (2003) (interpreting the definition of building as it relates to burglary). Once we determine the proper construction or meaning of the statute, however, whether the evidence produced at trial matches or meets that definition is a factual question for the trier of fact that we review for sufficiency of the evidence.[5]See Wentz, 149 Wash.2d at 347, 352, 68 P.3d 282 (citing to sufficiency standards and applying those standards); State v. Gans, 76 Wash.App. 445, 446-47, 452, 886 P.2d 578 (1994), overruled on other grounds by Wentz, 149 Wash.2d 342, 68 P.3d 282.
¶ 12 Second degree burglary includes an element of unlawfully entering or remaining "in a building other than a vehicle or a dwelling." RCW 9A.52.030(1). It is this unlawful entry or remaining in a building that creates liability for burglary above and beyond the independent crime intended within that building, commonly theft. Washington's Criminal Code defines "building":
[I]n addition to its ordinary meaning, includes any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods; each unit of a building consisting of two or more units separately secured or occupied is a separate building.
RCW 9A.04.110(5).
¶ 13 We have found no Washington appellate cases interpreting this definition as it relates to door-less (or three-walled) garages, carports, shops, sheds, or the like.[6] The Washington cases interpreting the statutory definition of building focus instead on fenced areas,[7] when portions of a building constitute *740 a separate building,[8] or other counter-intuitive but specially designated buildings.[9] But one case applied this definition to a non-fenced structure and held that the normally fully enclosed (but temporarily partly open) basement area beneath a tavern was a building under this statute. The court explained that the open basement was a structure used for carrying on business because it contained plumbing fixtures used in the main part of the business. State v. Couch, 44 Wash.App. 26, 30-31, 720 P.2d 1387 (1986).
¶ 14 The Washington statute defining building expressly includes the "ordinary meaning" of that term. RCW 9A.04.110(5). Building is ordinarily defined as
[a] constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structuredistinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy.
WEBSTER'S THIRD NEW INT'L DICTIONARY 292 (1969).
¶ 15 The State's evidence established that the Simcoes' garage is permanent and immobile, covers a space of land, is roofed, and serves as a storehouse or other useful structure. To meet the above definition, such a structure need only be "more or less completely enclosed" and we hold that a four-sided garage that is merely missing a door satisfies this requirement.
¶ 16 The definition of building in RCW 9A.04.110(5) also includes a number of specific items and structures that are capable of being burglarized. This list of non-traditional buildings includes "any other structure used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods." RCW 9A.04.110(5).[10]
¶ 17 Whether or not the garage falls within the "ordinary meaning" of what is a building, it is clearly a "structure" used for the "deposit of goods." A structure is "something constructed or built." WEBSTER'S THIRD NEW INT'L DICTIONARY 2267 (1969). And "goods" are "tangible movable personal property having intrinsic value." Gans, 76 Wash.App. at 450, 886 P.2d 578 (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 978 (1981)). The only testimony regarding the use of the structure in question is that the Simcoes used it to store tools, lawn equipment, and items soon to be sold at a garage sale. The Simcoes' garage, even without its door, falls within the specific legislative definition of building.[11]
¶ 18 The trial court properly instructed the jury in the language of the statute, including the determinative language quoted above.[12] *741 The evidence, when viewed in the light most favorable to the State, was sufficient to allow a reasonable fact-finder to conclude beyond a reasonable doubt that the Simcoes' garage was a building. See State v. Green, 94 Wash.2d 216, 220-22, 616 P.2d 628 (1980).

UNANIMITY
¶ 19 Relying on State v. Klimes, 117 Wash.App. 758, 73 P.3d 416 (2003), overruled in part by State v. Allen, 127 Wash.App. 125, 110 P.3d 849 (2005), Johnson contends that unlawful entering and unlawful remaining are alternative means of committing burglary. He then asserts that he was deprived of his constitutional right to a unanimous jury verdict because the trial court's "to convict" instruction allowed conviction if he entered or remained in the garage with intent to commit a crime.
¶ 20 But Klimes is no longer good law. In Allen, Division One repudiated its overly broad statement in Klimes that the unlawful entering and unlawful remaining means of committing burglary are repugnant to each other. 127 Wash.App. at 132, 110 P.3d 849. The significance of this holding is that no special jury instruction or prosecutorial election of means is required and, in most burglary cases, juries can be instructed as to both means. See Allen, 127 Wash.App. at 130, 132, 133, 135-36, 110 P.3d 849. So long as there is sufficient evidence as to each means or so long as a reviewing court can tell that the verdict was based on only one means which was supported by substantial evidence, a general verdict finding the defendant guilty of burglary will stand. Allen, 127 Wash.App. at 130, 135-36, 110 P.3d 849.
¶ 21 Allen specifically considered and rejected the argument that the "unlawfully remaining" means is restricted to factual situations in which there is an initially licensed entry but that permission is revoked or its scope exceeded. 127 Wash.App. at 133-35, 110 P.3d 849. Instead, when someone enters unlawfully, that person has no permission to be inside, so any period of remaining is also unlawful, satisfying both alternate means. Allen, 127 Wash.App. at 133, 110 P.3d 849. Here, the State presented evidence sufficient to prove beyond a reasonable doubt both the unlawful entering and the unlawful remaining means of committing burglary.
¶ 22 Applying the Green sufficiency of the evidence test to the record on appeal establishes that the State presented sufficient evidence to allow a reasonable fact-finder to conclude beyond a reasonable doubt that Johnson had committed the crime by either unlawfully entering or unlawfully remaining in the Simcoes' garage. Johnson did not have permission to enter the garage or remain there. His initial entry and his remaining were without permission, invitation, or license and both were thus unlawful. See former RCW 9A.52.010(3) (1985). Thus, even under the rejected Klimes analysis, when there is sufficient evidence to convict presented on each means of committing a crime, a general verdict will stand, and there is no need for an instruction or special verdict as to the alternate means. 117 Wash. App. at 770, 73 P.3d 416.[13]

SAG
¶ 23 In his SAG, Johnson makes several arguments based on a novel argument that the unattached garage was part of a larger structure or building at the victim's address. Focusing on the second part of the statutory definition of building, Johnson argues that such structures or spaces within larger structures only qualify as separate buildings if they are "separately secured," and since the garage was not so secured, it was not a building. See RCW 9A.04.110(5). Johnson makes this argument in an apparent attempt to avoid the fact that the rest of the statutory definition does not require complete enclosure or securing before a structure can be classified as a building. But Johnson's argument fails because the Simcoes' garage is not a unit of any larger building or structure. Moreover, this portion of the statutory definition applies only to *742 larger structures with two or more rooms "occupied or intended to be occupied ... by different tenants separately." State v. Thomson, 71 Wash.App. 634, 644, 861 P.2d 492 (1993) (quoting former RCW 9.01.010(17) (1909)). There was only one tenant for both the house and the garage: the Simcoe family consisting of Andria Simcoe, her husband, and her 13-year-old cousin. Johnson is not entitled to relief on this theory.[14]
¶ 24 Johnson also argues that the trial court violated the speedy trial rule, CrR 3.3, necessitating dismissal.
¶ 25 Because the burglary occurred on September 16, 2003, and the State filed charges on January 13, 2004, the new version of CrR 3.3, the speedy trial rule (effective September 1, 2003), governs this case. The court arraigned Johnson on January 27, 2004. Although the trial court was holding Johnson in jail on $30,000 bail for the burglary charge, because he was serving a sentence for another cause, apparently until sometime in June 2004, he was not "detained in jail" on the burglary charge as that term is defined at CrR 3.3(a)(3)(v). Therefore, the court had 90 days to bring Johnson to trial. CrR 3.3(b)(2)(i).
¶ 26 The court timely set Johnson's initial trial date for March 10, 2004. On that date, over Johnson's objection, the court reset the trial to April 14, 2004, the 78th day. Johnson specifically argues an inadequate basis for this change, but since the new trial date was still within the applicable speedy trial period, we need not rule on his claim. On April 14, 2004, the court continued the trial date to May 3, 2004, over Johnson's objection, because the assigned deputy prosecutor was trying a different case on April 14.
¶ 27 On May 3, 2004, the court again continued the trial, with agreement of both counsel, because the defense was raising a new pre-trial motion to dismiss. The record is not clear[15] as to whether Johnson personally agreed to the continuance; he later said that he had not agreed. The court set a new trial date of May 10, 2004.
¶ 28 On May 10, 2004, the transcript of the hearing indicates that no courtroom was available for the trial. The lawyers wanted to set a date to hear a motion to dismiss, as well as a new and separate trial date. Johnson also wanted a date to hear that motion as well as his own pro se motions, but objected to continuing the trial date. Over Johnson's objection, but at the request of his counsel, the court continued the trial date to June 9, 2004, and set a motion hearing date of May 26, 2004. The stated written reason for the continuance was to "secure separate motion date which could be dispositive." CP at 106.
¶ 29 On June 9, 2004, the matter was "sent out" for trial and the parties made preliminary motions. The State learned that the investigating detective, who had prepared the photo montage and witnessed the victim's identification of Johnson as the burglar, would not be available. The State moved to continue the trial date, and the court granted the motion, over Johnson's objection. The court continued the trial date to June 16, 2004. Trial commenced on June 16, 2004.
¶ 30 A continuance granted under CrR 3.3(f) is an "excluded period" under CrR 3.3(e)(3). The trial court made each continuance of Johnson's trial date under CrR 3.3(f). So long as those continuances met the requirement of the rule, then each period of continuance is "excluded in computing the time for trial." CrR 3.3(e). And when those continuances are excluded, the court tried *743 Johnson on day 78, with 12 days still remaining in his 90-day period.
¶ 31 Johnson argues that the court below did not have good cause to continue the trial dates over his objection. Johnson's counsel requested or agreed to two of the continuances, and a defendant's attorney may waive the timely trial rule by requesting a continuance to ensure effective representation. See, e.g., State v. Campbell, 103 Wash.2d 1, 14-15, 691 P.2d 929 (1984), cert. denied, 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 526 (1985). And a motion for continuance made "on behalf of any party waives that party's objection to the requested delay." CrR 3.3(f)(2).
¶ 32 As to the other two continuances, under the timely trial rule, a court can grant a motion to continue if "required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." CrR 3.3(f)(2). Johnson provides no specific arguments as to why the various causes proffered for the continuances were not necessary to "the administration of justice." Moreover, Johnson does not make any effort to show how the continuances prejudiced the presentation of his defense and we cannot see how they did.[16] Johnson has not demonstrated the abuse of discretion necessary to overturn the trial court's decision to grant the continuances, either those requested by his counsel or by the State. See State v. Flinn, 154 Wash.2d 193, 199, 110 P.3d 748 (2005).
¶ 33 Johnson also argues pro se that his lawyer provided constitutionally ineffective assistance of counsel by failing to subpoena witnesses. But, Johnson does not identify which witnesses or provide any proof of how these witnesses would have testified. While a SAG need not cite to the record or to authority, we "will not consider" a SAG which fails to "inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). Moreover, the portion of the record to which Johnson refers is one in which his lawyer was seeking a missing witness instruction because the State had not called as witnesses one of the responding officers and the cousin who resided with the Simcoes. The court refused to give the instruction, simply noting the defense could also have subpoenaed these witnesses. And there is no basis in the record to believe these witnesses would have been helpful to Johnson's defense.
¶ 34 Finally, Johnson also complains that in rebuttal closing argument, the State shifted the burden of proof by arguing to the jury that the defense could have called certain witnesses if they were helpful. The trial court overruled a defense objection to this argument. The prosecutor's statements related to the same two witnesses discussed above, a police officer and the cousin, and the prosecutor was responding directly to the defense closing which argued that the State should have presented testimony from those witnesses. There was no misconduct.
¶ 35 Affirmed.
We concur: BRIDGEWATER and ARMSTRONG, JJ.
NOTES
[1] Exhibit 1 is a photograph taken from the street depicting the driveway, house, and garage; Exhibit 2 is the opposite view.
[2] The court rejected three proposed defense instructions regarding the definition of building. The proposed instructions were as follows:

A structure which consists of three walls and a large doorway that is not capable of being closed is not a "building" for the purposes of burglary in the second degree.
CP at 31.
A structure which is incapable of being fully enclosed is not a "building" for the purposes of burglary in the second degree.
A structure which consists of three walls and a large doorway, but with no door(s), is incapable of being fully enclosed, and is therefore not a "building" for the purposes of burglary in the second degree.
CP at 32.
It is up to you the jury to determine whether or not the structure in question is a "building" as such definition applies to Burglary In The Second Degree. Where a structure is of such a nature that it is erected mainly for the purpose, and is capable of, protecting property within its confines and is, in fact, an integral part of a closed compound, its function becomes analogous to that of a "building" and the structure itself constitutes a "building" subject to being burglarized.
CP at 33.
[3] Instruction No. 9 told the jury that the first element was that "the defendant entered unlawfully in a building" and that the second element was "[t]hat the entering or remaining was with intent to commit a crime against a person or property therein." CP at 48 (emphasis added).
[4] See RAP 10.10(a).
[5] Thus, Johnson is incorrect when he asserts that it was error for the trial court to submit to the jury the question of whether the garage was a building. It would have been error for the trial court to ask the jury to determine the proper legal definition of "building," but it was not error for the trial court to define the term and then ask the jury to determine whether the State had proved that the garage met that definition.
[6] Other jurisdictions have considered the issue of what sort of structures (including what sort of garages, carports, shops, and sheds) are "buildings" for the purposes of the elements of burglary. JEFFREY F. GHENT, ANNOTATION, WHAT IS "BUILDING" OR "HOUSE" WITHIN BURGLARY OR BREAKING AND ENTERING STATUTE, 68 A.L.R.4th 425 (1989). But these decisions are not very useful to our analysis, as they interpret the varying definitional statutes of those jurisdictions. See State v. Deitchler, 75 Wash.App. 134, 138 n. 6, 876 P.2d 970 (1994), review denied, 125 Wash.2d 1015, 890 P.2d 20 (1995).
[7] Wentz, 149 Wash.2d 342, 68 P.3d 282; Gans, 76 Wash.App. 445, 886 P.2d 578; State v. Brenner, 53 Wash.App. 367, 768 P.2d 509 (1989), overruled on other grounds by Wentz, 149 Wash.2d 342, 68 P.3d 282, review denied, 112 Wash.2d 1020 (1989); State v. Flieger, 45 Wash. App. 667, 726 P.2d 1257 (1986), overruled on other grounds by Wentz, 149 Wash.2d 342, 68 P.3d 282 (2003); State v. Lira, 45 Wash.App. 653, 726 P.2d 1015 (1986), review denied, 107 Wash.2d 1028 (1987). Wentz overruled Gans, Brenner, and Flieger when it held that any fenced area met the statutory definition, and that the purpose of the fenced area need not be primarily to protect goods or conduct business.
[8] State v. Miller, 91 Wash.App. 869, 960 P.2d 464 (1998), review denied, 137 Wash.2d 1012, 978 P.2d 1100 (1999); In re Pers. Restraint of Miller, 90 Wash.App. 720, 954 P.2d 925 (1998); Deitchler, 75 Wash.App. 134, 876 P.2d 970; State v. Thomson, 71 Wash.App. 634, 861 P.2d 492 (1993).
[9] State v. Tyson, 33 Wash.App. 859, 658 P.2d 55 (semitrailer or cargo container), review denied, 99 Wash.2d 1023 (1983).
[10] The phrase limiting structures defined as "buildings" to those used for certain enumerated purposes modifies only "structure" and not the other items listed, such as "vehicles" and "fences." Wentz, 149 Wash.2d at 350-51, 68 P.3d 282.
[11] The Couch court applied the same "structure" portion of the statutory definition to determine that the area beneath a tavern was a building because it was a structure used for "carrying on business." See 44 Wash.App. at 30-31, 720 P.2d 1387.
[12] Instruction No. 18 stated, "Building, in addition to its ordinary meaning, includes any dwelling, fenced area, vehicle, railway car, cargo container or any other structure used mainly for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods." CP at 58.
[13] The facts in Klimes also distinguish it from this case. There the prosecutor had argued that even if defendant had entered lawfully (as Klimes testified he had) that his remaining became unlawful when he formed the intent to steal. Klimes, 117 Wash.App. at 767-68, 770-71, 73 P.3d 416. Here, Johnson never testified that he had permission to enter the Simcoes' property or the structure where they stored their tools.
[14] Specifically, we are rejecting on the merits the following arguments based on this theory: insufficiency of the evidence, definitional ambiguity requiring application of the rule of lenity, ineffective assistance of counsel for failing to make various arguments related to this theory, improper denial of a State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986), motion to dismiss, prosecutorial closing arguments regarding the requirement of enclosure, instructional error for not including the multi-unit portion of the statutory definition of building, and other instructional errors for failure to provide instructions supporting this theory.
[15] There are no transcripts from the hearings on April 14, 2004, and May 3, 2004. There are some unintelligible markings on the signature line for Johnson on the May 3 order but, unlike previous continuance orders to which Johnson objected, the May 3, 2004 request does not state that Johnson "objects to continuance" or "refuse to sign."
[16] Johnson did argue extensively in the trial court that the "delay" in filing the charges prejudiced him in contacting witnesses who might have supported an alibi defense, suggesting that he lost his chance to contact them before the charges were filed. Even if true, this argument would not support a showing of prejudice from continuing the trial, which would actually give Johnson more time to find these witnesses. The initial "delay" in filing is no longer grounds to dismiss. CrR 4.1(a).