# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58338-1-II |
| Respondent, | |
| v. | |
| RYAN THOMAS TOTH, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Ryan Toth was convicted of residential burglary for breaking into his estranged wife's house while a protection order prohibited him from entering her home.

Toth appeals, arguing that insufficient circumstantial evidence supports his conviction and that the victim penalty assessment and DNA collection fee should be stricken from his judgment and sentence. In a statement of additional grounds, he argues that he was deprived of the right to counsel during a pretrial hearing and that there were instances of judicial bias and prosecutorial misconduct in his pretrial proceedings and trial.

We remand for the trial court to strike the victim penalty assessment and DNA collection fee. We otherwise affirm.

## FACTS

### I. BACKGROUND

Toth and Elizabeth Bramlett married in 2019 and they have a child in common. At the time of the burglary, Toth and Bramlett were separated and in the middle of dissolution proceedings.

During the proceedings, the court granted a protection order that prohibited Toth from contacting Bramlett.

Bramlett lived in a home she co-owned with Toth, but Bramlett obtained a second protection order that prevented Toth from being at or near the home. After the second protection order, Toth moved out, taking some of his personal items and leaving others behind in the home.

About two months after the second protection order was entered, Bramlett returned to her residence after a weekend trip away. She noticed that the garage door would not open and the electric keypad for the front door was broken. Once inside, Bramlett noticed several other things had changed since the last time she was home. For example, a pair of Toth's shoes was missing from the home and a different pair of Toth's shoes was now present in the laundry room. Two important documents had also been moved. The first document concerned a phone that the Washington State Department of Children, Youth, and Families (DCYF) provided to Bramlett. The second document was from the Oregon Department of Human Services (DHS) and concerned renewing state benefits.

Bramlett called 911 to report a break-in, alleging that Toth was responsible. The State investigated and ultimately charged Toth with residential burglary, malicious mischief in the third degree, and several other crimes.

## II. PRETRIAL HEARINGS

The trial court held a pretrial hearing to consider the State's motions in limine, which consisted predominantly of motions to exclude evidence. The prosecutor and defense counsel were present in court for the hearing, while Toth joined via Zoom. Toth told the trial court that the audio of the proceeding was a bit quiet for him, but Toth was able to hear and respond to questions from

the court and defense counsel throughout. At one point during the hearing, Toth got disconnected from Zoom, but he soon rejoined the hearing via speakerphone. While Toth was reconnecting to the hearing, the trial court confirmed which exhibits were admissible to show Toth's activities during some of the time the burglary could have taken place and excluded some text messages between Toth and Bramlett's mother.

The trial court made several pretrial rulings regarding the admissibility of evidence. For example, Toth sought admission of evidence about law enforcement's consideration of charges against Bramlett. Although defense counsel argued that this information would provide context to the reasonable fear element of the stalking charge, the trial court ultimately excluded evidence of law enforcement's consideration of charges against Bramlett because this evidence was not relevant. However, the trial court reasoned that some of the factual descriptions of surrounding events could still be admissible to show whether reasonable fear existed or not.

Later in the pretrial hearing, the trial court evaluated the admissibility of statements from Bramlett's mother and whether Bramlett's mother could serve as a witness for the defense. Although defense counsel argued that Bramlett's mother had unique insight into Bramlett's reputation for dishonesty, the trial court ultimately excluded Bramlett's mother as a witness because she was being offered to impermissibly "comment on the credibility of other witnesses" in violation of ER 608(b). 1 Verbatim Rep. of Proc. (VRP) at 36.

Finally, the trial court considered the admissibility of photos that provided some examples of what Toth was doing during the weekend the burglary took place. Defense counsel argued that while such evidence was not enough to assert an alibi defense, the photos showed that Toth really was with his child for parts of the weekend. The trial court ruled that most of the photos were

3

admissible to show what the defendant was doing during the time period in which the burglary occurred.

## III. TRIAL

A.      State Witnesses

Bramlett began by testifying that before the burglary occurred, there was another incident where her security camera recorded someone putting nails in and around her car. Bramlett alleged that Toth was the person in the video based on her familiarity with his walk, his clothes, and his build. Toth was ultimately found not guilty of malicious mischief, the charge related to these allegations.

As for the burglary, Bramlett testified that she arrived back at her residence after a weekend away. Upon her arrival, she noticed that the garage door would not open electronically. Then she tried opening the front door and realized that the electric keypad was broken and the manual key required more force than usual to open the door. Once inside, Bramlett said that she noticed a variety of disturbances in her home, including a vacuum cleaner wedged into the garage door, the air conditioning unit moved from the window to the floor, and a trap with a lawn mower blade set up near the garage door.

Bramlett also testified that a pair of Toth's work boots were missing, while a different pair of Toth's shoes that had not been there before were found in the laundry room. Additionally, Bramlett said that two important documents that she usually kept on the counter in the middle of the home had been moved. The first document concerned a phone provided to her by DCYF. The second document, from DHS, was about renewing state benefits. Bramlett testified that the first

document was hand delivered to her by a DCYF employee handling her case. The second document was delivered to Bramlett's post office box.

Bramlett testified that when she received this second document, Toth had no access to the post office box, because Bramlett had removed authorization for Toth to access the mailbox and changed the keys. Bramlett also testified that she received both of these documents after the second protection order against Toth was issued, which prohibited Toth from entering or coming near Bramlett's home.

Furthermore, a DCYF employee who handled Bramlett and Toth's case testified that on the day Bramlett returned home, she received two texts on her work phone from Toth. Toth's texts stated that DCYF was providing Bramlett with phone services that were not being provided to him, and that DCYF bought Bramlett a phone even though he had reported that she received benefits from Oregon. The employee also testified that attached to Toth's texts were pictures of the two documents sent from DCYF and DHS to Bramlett. The employee forwarded Toth's texts to her former supervisor. The former supervisor testified that she provided Toth's texts to law enforcement.

B.    Closing Arguments

In the portion of the State's closing argument that focused on the entry element of the residential burglary charge, the prosecutor highlighted the two documents that Toth photographed and sent to the DCYF employee. The prosecutor referenced Bramlett's testimony that the documents belonged to her and she was the only one who had access to them. The prosecutor emphasized that Toth's texts about the documents were consistent with the contents of the

5

documents themselves. The prosecutor also highlighted that Toth's shoes were exchanged, with one pair newly missing and one pair newly arrived in the home.

During their closing argument, defense counsel questioned whether Toth actually sent the text messages about the documents. Defense counsel also raised doubts about the evidence against Toth regarding the charge of malicious mischief. Defense counsel argued that the State's evidence of malicious mischief relied on a videotape of someone putting nails in and around Bramlett's car tires and Bramlett's testimony that she recognized Toth as the figure in the video. However, because the person was wearing a mask, defense counsel argued that it would be difficult for Bramlett to identify them.

In the State's rebuttal, the prosecutor argued that Bramlett's testimony regarding the incident with the nails was supported by video and photos. The prosecutor asked the jury, "[W]ho else are we talking about?" 2 VRP at 592. The prosecutor then said, "I'm not saying that alone is enough. But, you do have the video and the pictures." *Id.*

The jury found Toth guilty of residential burglary, among other crimes. But the jury found Toth not guilty of malicious mischief in the third degree with regard to the incident with the nails.

IV. SENTENCING

The trial court sentenced Toth to 15 months of total confinement. The trial court found that Toth was indigent under RCW 10.101.010(3) but imposed a $500 victim penalty assessment. The trial court also imposed a $100 DNA collection fee.

Toth appeals his burglary conviction and he argues the victim penalty assessment and the DNA collection fee should be stricken from his judgment and sentence.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Toth contends that the State failed to prove the entry element of the residential burglary charge because the State relied only on inadequate "circumstantial evidence and inferences." Appellant's Opening Br. at 11. Toth argues that while circumstantial evidence is as reliable as direct evidence, in this case, there was not enough circumstantial evidence to support his conviction for residential burglary. First, Toth contends that no evidence placed Toth at Bramlett's house at the time of the burglary, pointing out that the police did not collect fingerprints and there were no eyewitnesses or cell phone records locating Toth near the house. Toth also argues that the State failed to prove Bramlett's documents were inaccessible to Toth. Finally, Toth contends the State's argument in closing, that no one else would have committed the burglary, was speculation unsupported by actual corroborative evidence. We disagree.

### A.      Sufficiency of the Evidence Standard

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found [the defendant] guilt[y] beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it." *State v. O'Neal*, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007). Therefore, the court must draw "all reasonable inferences from the evidence in favor of the State and against the defendant." *In re Pers. Restraint of Arntsen*, 2 Wn.3d 716, 724, 543 P.3d 821 (2024). The standard of review for a challenge to the sufficiency of the evidence supporting a criminal conviction is deferential to the factfinder, and "questions of credibility, persuasiveness,

and conflicting testimony must be left to the jury." *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 364, 256 P.3d 277 (2011).

When we evaluate the sufficiency of the evidence supporting a conviction, we consider circumstantial evidence to be as reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980); *see also O'Neal*, 159 Wn.2d at 506 ("Direct evidence is not required to uphold a jury's verdict; circumstantial evidence can be sufficient."). The State's reliance on circumstantial evidence does not change the burden of proof: "even if the only evidence of guilt is circumstantial, the jury need only be convinced of guilt beyond a reasonable doubt." *State v. Couch*, 44 Wn. App. 26, 30, 720 P.2d 1387 (1986); *see also State v. Gosby*, 85 Wn.2d 758, 764-67, 539 P.2d 680 (1975) (rejecting the old principle that circumstantial evidence also needed to be strong enough to be "inconsistent with innocence").

B.      Residential Burglary

"A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." RCW 9A.52.025(1). Evidence that the defendant was at or near the location of the burglary is circumstantial evidence that can support a burglary conviction. *See Couch*, 44 Wn. App. at 27-30 (rejecting a sufficiency of the evidence challenge to the unlawful entry element of a burglary conviction when a witness heard the sound of someone moving inside the burglarized tavern and then shortly thereafter, the defendant was seen climbing over a nearby fence and leaving in the car he parked close by). But evidence the defendant was at or near the scene of the burglary is not the only evidence that can be sufficient to support a burglary conviction.

For example, where a defendant was charged with burglary and there was proof that they possessed property relevant to the charge, such possession alone was not prima facie evidence of burglary. *State v. Mace*, 97 Wn.2d 840, 843, 650 P.2d 217 (1982). However, possession of the property and "'slight corroborative evidence of other inculpatory circumstances tending to show [the defendant's] guilt will support a conviction.'" *Id.* at 843 (quoting *State v. Portee*, 25 Wn.2d 246, 253-54, 170 P.2d 326 (1946)). Other corroborative evidence could include providing a "'false or improbable'" explanation for possession of the property, giving a fictitious name when apprehended, running from the scene, and other "circumstantial proof of entry." *Id.* at 843-45 (quoting *Portee*, 25 Wn.2d at 254).

In *State v. Ehrhardt*, we upheld a burglary conviction against a sufficiency of the evidence challenge where the State presented evidence that the defendant possessed a gas can that was stolen from the back porch of a house and the defendant had parked his car in the driveway of that house. 167 Wn. App. 934, 938-39, 943-44, 276 P.3d 332 (2012). *See also Portee*, 25 Wn.2d at 254 (upholding a burglary conviction when the State provided evidence that the defendant pawned a suitcase on the same day it was stolen, gave a fake name and address at the pawn shop, and provided an explanation for possession of the suitcase that could not be verified).

Furthermore, when the State relies solely on fingerprint evidence that the defendant touched a burglarized building or property within it to support a burglary conviction, the State must show that the building or property was previously inaccessible to the defendant, so that a reasonable jury could infer that any evidence of the defendant's presence could only have been left at the time of the burglary. *See State v. Bridge*, 91 Wn. App. 98, 100-01, 955 P.2d 418 (1998) (reversing a conviction when the State solely relied on the defendant's fingerprint on a tool in the

burglarized property because the tool was recently accessible to the public in the stream of commerce). *See also State v. Lucca*, 56 Wn. App. 597, 600-03, 784 P.2d 572 (1990) (holding that the defendant's fingerprint on the window of the burglarized home was sufficient to support a burglary conviction because the outside of the window was not generally accessible to the public or the defendant).

In sum, circumstantial evidence may be sufficient for a jury to infer unlawful entry. It is not necessary that there be direct evidence that the defendant was at or near the location of the burglary, so long as other evidence supports the conviction. And evidence that an item or location was not publicly accessible is relevant to the issue of unlawful entry. Finally, we must always view the evidence in the light most favorable to the jury's verdict.

C.    Toth's Entry

Here, the State provided sufficient circumstantial evidence for a reasonable jury to find, beyond a reasonable doubt, that Toth unlawfully entered Bramlett's house. Toth possessed property that was inside Bramlett's house—he texted pictures of two documents that belonged to Bramlett and were located inside her home. Bramlett testified that these documents were otherwise inaccessible to Toth because she received the documents after the most recent protective order, he had not had access to her home since, and she had removed Toth's access to her post office box. Therefore, similar to the defendants in *Portee* and *Ehrhardt*, Toth was briefly in possession of objects that did not belong to him. Additionally, like the fingerprint near the window in *Lucca*, Toth's pictures of Bramlett's documents showed that he obtained property that was inaccessible to him or the public at any time prior to the burglary. Additionally, the DCYF employee received Toth's text about the documents near the time of the burglary and on the day that Bramlett returned

to her residence. Therefore, a reasonable jury could have relied on Toth's texts as circumstantial evidence of entry. Although Toth disputes this evidence, sufficiency challenges are viewed in the light most favorable to the State, accepting the truth of the State's evidence. *O'Neal*, 159 Wn.2d at 505.

In addition to the documents, the State also offered evidence that a pair of Toth's shoes were removed from Bramlett's home and a different pair of Toth's shoes were left in Bramlett's home while she was out of town. Furthermore, the State also offered evidence that Toth knew Bramlett was out of town because their child was meant to be residing with Toth on those days. Thus, Toth also had a personal connection to his estranged wife and unique knowledge about her upcoming absence from the residence. These pieces of circumstantial evidence all support the jury's finding that Toth committed burglary.

In sum, viewing the evidence in the light most favorable to the State, a rational trier of fact could find that Toth unlawfully entered Bramlett's residence. Therefore, sufficient evidence supports Toth's residential burglary conviction.

## II. VICTIM PENALTY ASSESSMENT AND DNA COLLECTION FEE

Toth argues that the victim penalty assessment should be stricken from his judgment and sentence. The State agrees and adds that the DNA collection fee should also be stricken.

Trial courts may no longer impose the crime victim penalty assessment on indigent defendants. RCW 7.68.035 (4). Moreover, under RCW 43.43.7541(2), DNA collection fees are no longer authorized. LAWS OF 2023, ch. 449, § 4. A new statute is applicable to cases prospectively where the "'precipitating event'" that triggers the statute's application occurs after the effective date of the statute. *State v. Wemhoff*, 24 Wn. App. 2d 198, 201, 519 P.3d 297 (2022) (quoting *State*

*v. Blank*, 131 Wn.2d 230, 249, 930 P.2d 1213 (1997)). For statutes that concern costs or fees imposed by the trial court, the precipitating event is the termination of all appeals. *Id.* at 201-02.

Here, Toth's case was pending on appeal when the changes in the law affecting these fees took effect. The trial court found Toth to be indigent under RCW 10.101.010(3)(c). And the State concedes that Toth is indigent, that the DNA collection fee has been eliminated, and that we should remand to strike both the victim penalty assessment and the DNA collection fee. We accept the State's concession and remand for the trial court to strike both fees.

### III. STATEMENT OF ADDITIONAL GROUNDS

In a statement of additional grounds (SAG), Toth raises claims of deprivation of the right to counsel, judicial bias, and prosecutorial misconduct. These claims fail.

A.      Right to Counsel

Toth argues that he was denied the "'right to assistance of counsel at all critical stages of proceedings.'" SAG at 2. During a pretrial hearing to address several motions in limine to exclude evidence, Toth attended the hearing via Zoom while his attorney appeared in person. Toth contends that the connectivity issues he experienced and his inability to speak privately with his attorney in a Zoom breakout room resulted in his attorney misunderstanding the relevance of certain pieces of evidence. Specifically, Toth contends that evidence about his whereabouts during the time when the burglary could have occurred should have been used as an alibi; evidence about Bramlett's previous interactions with police and potential false reporting should have been used to question Bramlett's honesty; and conversations with Bramlett's mother should have been used to question Bramlett's fear of Toth. Neither defense counsel nor Toth raised this issue below.

58338-1-II

"Under both the Washington and United States Constitutions, a criminal defendant is entitled to the assistance of counsel at critical stages in the litigation." *State v. Heddrick*, 166 Wn.2d 898, 909-10, 215 P.3d 201 (2009); U.S. Const. amend. VI; Wash. Const. art. 1, § 22.

The right to counsel "also requires defendants to have the ability to confer meaningfully and privately with their attorneys" during critical stages of their proceedings. *State v. Dimas*, No. 57528-1-II, slip op. at 5 (Wash. Ct. App. Mar. 5, 2024).[1] *See also State v. Hartzog*, 96 Wn.2d 383, 402, 635 P.2d 694 (1981). "In assessing whether the right to confer has been violated, 'reviewing courts should consider the totality of the circumstances, *including* whether the trial court explicitly established a process for such communications, given the variety of different circumstances that may occur.'" *Dimas*, slip op. at 5-6 (quoting *State v. Bragg*, 28 Wn. App. 2d 497, 507, 536 P.3d 1176 (2023)).

1. Review for the first time on appeal

Under RAP 2.5(a)(3), an appellate court may refuse to review a claim of error that was not previously raised in the trial court unless the party raises a "manifest error affecting a constitutional right." To meet this exception to the general rule, the party must demonstrate that "the error is manifest" and that "the error is truly of constitutional dimension." *State v. J.W.M.*, 1 Wn.3d 58, 90, 524 P.3d 596 (2023). To prove that an alleged error is manifest, the party must show actual prejudice, defined as a "'plausible showing'" that the asserted error had "'practical and identifiable consequences.'" *Id.* at 91 (internal quotation marks omitted) (quoting *State v. O'Hara,* 167 Wn.2d 91, 99, 217 P.3d 756 (2009)).

---

[1] https://www.courts.wa.gov/opinions/pdf/D2%2057528-1-II%20Published%20Opinion.pdf.

13

In *Dimas*, the defendant appeared remotely via Zoom for his pretrial hearings while defense counsel appeared from various other locations. Although the defendant did not challenge the Zoom arrangement at the time, on appeal, the defendant argued for the first time that the setup violated his right to meaningfully and privately confer with his attorney. The court found no manifest error where there was no indication that the additional information from the defendant would have made a difference in any of the relevant pretrial rulings, and the defendant's ability to confer with counsel would not have altered the outcome.

### 2.     Toth's claim of manifest error

Here, even assuming the pretrial hearing was a critical stage and that Toth raises an alleged error of constitutional magnitude, he has not established that any error was manifest. Like the defendant in *Dimas*, Toth was represented at the challenged hearing.

The alleged inability to confer with counsel would not have impacted the trial court's evidentiary rulings for two reasons. First, Toth's attorney did raise many of Toth's specific arguments when advocating for the inclusion of his proposed evidence. For example, Toth's attorney argued for the inclusion of statements from Bramlett's mother for the purpose of undermining Bramlett's credibility and establishing the absence of her fear. Additionally, Toth's attorney advocated for including photos taken during the time when the burglary could have occurred to show that Toth was otherwise occupied during much of this time. Toth's attorney was successful, and the trial court ruled that most of the photos were admissible. Thus, Toth's attorney, even without additional consultation from Toth, advocated for the inclusion of pieces of evidence for many of the same reasons now raised by Toth in his SAG.

Second, Toth's additional arguments were not likely to impact the trial court's decisions regarding the admissibility of evidence. For example, although Toth's attorney argued that the statements from Bramlett's mother were relevant to the element of fear, these statements were excluded as improper conduct of a witness under ER 608(b). Thus, as in *Dimas*, Toth's additional arguments about relevance would not have changed the trial court's decision regarding admissibility.

Because Toth has not shown that the trial court's evidentiary rulings would have differed if Toth had been able to confer with his attorney during the pretrial hearing, Toth has not met his burden of showing a manifest constitutional error. Therefore, we decline to consider Toth's unpreserved claim that his right to counsel was violated.

B.      Judicial Bias

Toth argues that the trial court showed personal prejudice by denying Toth's motion to dismiss and stating that a "'crime was committed and someone needs to pay.'" SAG at 3. Although it appears that the trial court considered a motion to dismiss during a pretrial hearing on December 1, 2022, there is no transcript of the hearing in our record. Therefore, Toth's argument depends on facts outside our record, and this issue cannot be resolved on direct appeal.

C.      Prosecutorial Misconduct

Toth contends that the prosecutor demonstrated bias against him when the prosecutor argued during closing that it made little sense for the perpetrator of the crimes to be someone other than Toth. *Id.* ("Who else would it be in this case?"). Toth contends that such arguments "show a personal opinion" that is "improper" for the jury to consider. *Id.*

15

When a defendant fails to challenge the prosecutor's remarks in the trial court, a defendant waives the prosecutorial misconduct claim unless the defendant shows, among other things, that comments were improper and there was a substantial likelihood the misconduct affected the verdict. *State v. Gouley*, 19 Wn. App. 2d 185, 201, 494 P.3d 458 (2021). In determining whether a prosecutor's remarks were improper, we evaluate the remarks in light of the prosecution's total argument. *State v. Anderson*, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009). Prejudicial error only occurs when "'it is clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion.'" *Id.* at 428 (emphasis omitted) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 54, 134 P.3d 221 (2006)).

Here, when the prosecutor's remarks are viewed in the totality of the prosecutor's closing, it is clear that the comments were not improper because they were proper responses to issues of credibility raised by the defense. Based on the whole context of the closing argument, the prosecutor made an argument about witness credibility and asserted that the jury should make a reasonable inference based on the photographic and video evidence. Finally, these remarks concerned the incident involving Bramlett's car tires, which served as the basis for a malicious mischief charge on which the jury ultimately acquitted. Thus, these remarks did not impact the jury verdict on the challenged burglary charge.

For all of these reasons, we do not grant Toth any relief based on the additional grounds raised in the SAG.

## CONCLUSION

We remand for the trial court to strike the victim penalty assessment and the DNA collection fee, but we otherwise affirm.

16

58338-1-II

_____
GLASGOW, J.

We concur:

_____
VELJACIC, A.C.J.

_____
PRICE, J.