[No. 41282-5-I.    Division One.    September 13, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. CASTULO JOE RIVAS, JR., *Appellant*.

---

*David B. Koch* of *Nielsen Broman & Associates, P.L.L.C.,* for appellant.

*Thomas L. Verge, Prosecuting Attorney,* and *Erik Pedersen, Deputy,* for respondent.

Cox, J. — Castulo Rivas, Jr., challenges for the first time the sufficiency of the evidence supporting two of three alternative means of assault, set forth in the jury instructions, underlying his conviction for second degree assault. Because we can determine from the record that the jury verdict was based on only one of the alternative means and substantial evidence supports that means, we affirm.

Rivas, his then girl friend, K.R., and her young son shared an apartment. On the evening of November 5, 1996, K.R. and her son were visiting her mother, who lived in the apartment unit above K.R. and Rivas. Rivas had been out of the apartment all day and returned home around dusk. He testified at trial that he had been with friends drinking and smoking marijuana. After hearing Rivas return home, K.R. eventually went downstairs to see him, taking her son with her. Rivas and K.R. soon began arguing.

K.R. testified at trial that after several minutes of arguing, Rivas grabbed her by the arm while she still held her son, took her into the bedroom, and threw her onto the bed. He then pulled a knife from the front of his pants, held it above her, and said, "How about if I kill you while your son watches[?]"

The State charged Rivas with second degree assault. Because Rivas had two previous "most serious offense[s]," assault in the second degree and attempted assault in the second degree, the trial court sentenced him to life in prison without the possibility of parole.[1]

Rivas appeals.

## Second Degree Assault

Rivas argues for the first time on appeal[2] that two of the three alternative means of second degree assault contained in jury instruction 14 were not supported by substantial evidence. Thus, he argues that jury unanimity was not ensured, and we should reverse. We disagree.

■ ■ Jury verdicts in criminal cases must be unanimous as to the defendant's guilt of the crime charged.[3] When the crime charged can be established by alternative means, jury unanimity as to the means is assured as long as substantial evidence supports each alternative means.[4] If one or more of the alternative means is not supported by substantial evidence, the verdict will stand only if we can determine that the verdict was based on only one of the

---

[1]The operative provisions of the Persistent Offender Accountability Act (POAA) are codified at RCW 9.94A.030(23) (defines "[m]ost serious offense"); RCW 9.94A.030(27) (defines "[p]ersistent offender"); and RCW 9.94A.120(4) (states in part, "A persistent offender shall be sentenced to a term of total confinement for life without the possibility of parole . . . .").

[2]*See* RAP 2.5(a)(3); *State v. Lynn*, 67 Wn. App. 339, 835 P.2d 251 (1992).

[3]*State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994) (citing Const. art. I, § 21).

[4]*Ortega-Martinez*, 124 Wn.2d at 707-08.

alternative means and that substantial evidence supported that alternative means.[5]

■ The charge here was second degree assault. RCW 9A.36.021(1)(c) defines such assault as assault with a deadly weapon. Because "assault" is not defined by the criminal code, courts use the common law to define the crime.[6] Here, instruction 14 described all three common law definitions of assault:

> An assault is an intentional touching, striking, cutting, or shooting of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching, striking, cutting or shooting is offensive, if the touching, striking, cutting or shooting would offend an ordinary person who is not unduly sensitive. [This paragraph describes common law battery.]

> An assault is also an act, with unlawful force, done with intent to inflict bodily injury upon another, tending, but failing to accomplish it, and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted. [This paragraph describes common law attempted battery.]

> An assault is also an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury. [This paragraph describes common law assault].

We agree that no evidence was offered at trial to support the first and second alternative means of committing assault. There simply was no evidence of either actual battery or attempted battery with respect to Rivas' use of the knife against K.R. Rivas did not touch, strike, or cut K.R. with the knife. Rivas also did not fail in an attempt to inflict

---

[5]*State v. Bland*, 71 Wn. App. 345, 354, 860 P.2d 1046 (1993).

[6]*State v. Hupe*, 50 Wn. App. 277, 282, 748 P.2d 263 (citing *State v. Krup*, 36 Wn. App. 454, 457, 676 P.2d 507, *review denied*, 101 Wn.2d 1008 (1984)), *review denied*, 110 Wn.2d 1019 (1988).

bodily harm on K.R. But the charging document and the trial record support the second degree assault verdict based on common law assault, the third alternative means.

We first consider the charging document. Count II of the information states:

> In that you, on or about the 5th day of November, 1996, in Skagit County, Washington, did assault [K.R.], a human being, with a deadly weapon, to wit: *held a knife to her throat*, a felony, contrary to RCW 9A.36.021(1)(c), and against the peace and dignity of the State of Washington.[7]

It is clear from this document that the State's charge was based on Rivas' wielding a knife against K.R. and no other act by him.

We next consider the trial record. At trial, K.R. testified that Rivas pushed her onto the bed, took a knife from the front of his pants, held it over her, and said, "How about if I kill you while your son watches[?]"[8] She further testified that this threat created fear and apprehension of bodily injury.

During closing argument, the State focused only on the common law assault alternative means to support the assault charge. The prosecutor stated:

> What makes [K.R.'s] story credible? Well, she remembers it in detail. She is upset by it. She is frightened by it. She is in fear and apprehension that he's going to kill her. He tells her he's going to kill her and lets her little baby watch.[9]

And in an attempt to respond to the jury's likely curiosity about why Rivas would have committed this crime, the prosecutor asked, "[W]hy would you assault another person while she is holding her child in her hands?"[10] In posing this rhetorical question, the prosecutor again referred to

---

[7](Emphasis added.)

[8]Report of Proceedings (RP) at 63.

[9]RP at 364.

[10]*Id.* at 361.

the incident of common law assault that formed the basis for the State's charge. Additionally, the prosecutor focused solely on that incident when talking about Rivas' culpability:

> But nobody held a gun to his head and told him to go out and drink a 12-pac, smoke some dope, have a couple of shots and pick a fight with his girlfriend. That's a voluntary act, and to hold the knife over her and put her in fear and apprehension that she is going to be killed in front of her watching son, that's an intentional act.[11]

Even the defense tacitly acknowledged that only the common law assault with the knife formed the basis for the second degree assault charge. During closing argument, counsel for Rivas reminded the jury that Rivas denied committing the assault against K.R. Counsel stated:

> There is not enough evidence because it's only her word against his word and there are no witnesses and there is no verifying evidence, and even her mother testified that when [K.R.] went upstairs and got her mother and her mother came back down, that's when they confronted him and told him to leave, [K.R.] never said anything to her about the assault. She didn't say anything at all. So there isn't any evidence that there was an assault other than one person's word against the other.[12]

The jury was entitled to believe that Rivas held a knife over K.R.'s head and threatened to kill her. It was also entitled to believe that the threat caused K.R. reasonable apprehension and imminent fear of bodily injury. Thus, as Rivas correctly concedes in his brief, there is substantial evidence to support a verdict that Rivas committed second degree assault only under the third alternative means. And, as we stated in *Bland*, a verdict will stand, even if one or more of the alternative means is not supported by substantial evidence, as long as the verdict was based on only one

[11]RP at 367.

[12]*Id.* at 374-75.

of the alternative means and substantial evidence supported that alternative means.[13]

Although Rivas contended at oral argument that *Bland* is distinguishable because the jury there used a special verdict form and there was none here, that case still controls. The charging document and the record at trial are sufficient here to apply *Bland* to this case.

Because there was no danger that the jury's verdict rested on an unsupported alternative means, we affirm the judgment and sentence. The remainder of this opinion has no precedential value and will be filed for public record in accordance with the rules governing unpublished opinions.[14]

AGID, A.C.J., and GROSSE, J., concur.

Review denied at 140 Wn.2d 1013 (2000).

---

[13]*State v. Bland*, 71 Wn. App. 345, 354, 860 P.2d 1046 (1993).

[14]RCW 2.06.040.