[No. 34227-8-II.   Division Two.   September 25, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID JONATHAN LOBE, *Appellant*.

898

*Patricia A. Pethick*, for appellant.

*Edward G. Holm, Prosecuting Attorney*, and *James C. Powers, Deputy*, for respondent.

¶1 PENOYAR, J. — The State charged David Lobe with violating a no-contact order protecting Tara Pappas, his ex-girlfriend. Before trial, Lobe had conversations with both Pappas and a mutual acquaintance, Ericka Attouf, instructing them to withhold information from the prosecution and/or stay away from court proceedings. Lobe was convicted of (1) violating Pappas's no-contact order, (2) committing a third violation of a no-contact order, (3) and

two counts of witness tampering. Lobe appeals, arguing that (1) the evidence was insufficient to support his convictions for witness tampering and (2) the court's failure to give a unanimity instruction requires reversal. The evidence was sufficient to support Lobe's convictions, but we reverse on the witness tampering charges due to lack of a specific jury unanimity instruction.

## FACTS

¶2 On May 16, 2005, Olympia Police Officer Brian Henry responded to a domestic violence call placed from a Thurston County Courthouse pay phone. When he arrived at the courthouse, he found Pappas crying, with red marks on her face. She informed Officer Henry that she had been visiting with Lobe across the street at his apartment and he had assaulted her. Officer Henry then went to Lobe's apartment and arrested him for violation of a no-contact order/domestic violence felony. Three days later, Lobe was charged with assault in violation of a no-contact order.

¶3 Pappas and Lobe dated for a short time in 2003, after which time she obtained a no-contact order to protect herself and her son. They restarted their relationship in March 2005. She moved in with Lobe but split her time between Lobe's apartment and her friend's (Attouf's) house "[b]ecause . . . there was a no-contact order." Report of Proceedings (RP) at 84-86. After Lobe attacked her, Pappas moved to Lewis County but remained in contact with Attouf.

¶4 Attouf later testified that Sara Gregoire, Lobe's new girl friend, called her around July 18, 2005. During the call, Attouf informed Gregoire that she had a voice mail from an attorney trying to get Pappas's new contact information. Lobe then got on the phone and warned Attouf that if she gave Pappas's contact information to "them" and Pappas did not appear in court, "that she [Pappas] would be in trouble and that he [Lobe] didn't want to see her get in trouble." RP at 140. "[H]e basically was saying make sure that she doesn't go to court because it's just—it's going to go

away . . . and just basically to not give the contact information." RP at 140-41.

¶5 Pappas also testified that on July 21, 2005, Gregoire called her and then put Lobe on the phone. According to Pappas, Lobe then told her to tell Attouf to conceal Pappas's contact information from the prosecuting attorney. Lobe also asked Pappas not to show up to court, and "[h]e kept repeating it to [her]." RP at 106. After speaking with Lobe, Pappas called Attouf and informed her of what Lobe had said.

¶6 On October 26, 2005, Lobe was charged by third amended information with violation of a no-contact order—assault (count I), third or subsequent violation of a no-contact order (count II), and two counts of witness tampering (count III—tampering with Pappas; count IV—tampering with Attouf). A jury trial followed.

¶7 The jury was given the following to-convict instruction:

Instruction No. 13

To convict the defendant of the crime of tampering with a witness, as charged in count III, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 21st day of July, 2005, the defendant attempted to induce a person, Tara Pappas, to testify falsely or, without right or privilege to do so, withhold testimony or absent himself or herself from any official proceeding or withhold from a law enforcement agency information which he or she had relevant to a criminal investigation; and

(2) That the other person was a witness or a person the defendant had reason to believe was about to be called as a witness in any official proceedings or a person whom the defendant had reason to believe might have information relevant to a criminal investigation; and

(3) That the acts occurred in the State of Washington.

Clerk's Papers at 86.

¶8 For count IV (tampering with Attouf), the jury was given a nearly identical to-convict instruction, changing

only the name of the witness and charge number. The court did not give a unanimity instruction.

¶9 The jury convicted Lobe on all counts but entered a special verdict finding that the violation of the no-contact order was not an assault. The court sentenced Lobe within the standard range for each offense, with all of the sentences running concurrently. This appeal followed.

## ANALYSIS

### I. SUFFICIENT EVIDENCE

¶10 Lobe first argues that the evidence presented was insufficient to prove beyond a reasonable doubt that he committed witness tampering with respect to Attouf (as charged in count IV). Specifically, he claims that the State did not prove either (1) that Attouf was to be called as a witness, or that Lobe had reason to believe that she would be called as a witness,[1] or (2) that Lobe directed Attouf to testify falsely, withhold information, or absent herself from an official proceeding.

¶11 The State concedes that no evidence showed Lobe attempting to induce Attouf to testify falsely or absent herself from the proceeding, but it argues that the evidence was sufficient to convince a reasonable trier of fact that Lobe had reason to believe that Attouf might have information relevant to the investigation and that he attempted to induce her to withhold that information.

¶12 The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be

---

[1] Lobe's phone conversation with Attouf took place on July 18; the record does not contain a witness list from the State until July 22, 2005. The witness list includes both Attouf and Pappas.

drawn in the State's favor and interpreted most strongly against the defendant. *Salinas*, 119 Wn.2d at 201.

¶13 Attouf testified that as she told Gregoire that the prosecution had left her a message (asking for Pappas's updated contact information), she could hear Gregoire relaying that information to Lobe. After Lobe heard this information, he personally spoke to Attouf and ordered her not to tell the prosecution how to contact Pappas.

¶14 Viewing this evidence in the light most favorable to the prosecution, it is clear that a rational trier of fact could have found Lobe guilty of witness tampering beyond a reasonable doubt. He had reason to believe that Attouf had information relevant to the prosecution, as he had just heard that the prosecution contacted her to attempt to locate the main witness in the case (Pappas). He then attempted to persuade her to withhold that information. The evidence was sufficient to support a conviction under the third alternative for witness tampering: an attempt to induce a person to withhold information from a law enforcement agency. There was clearly sufficient evidence to convict Lobe on witness tampering.

II. UNANIMITY INSTRUCTION

¶15 Next, Lobe argues that his witness tampering convictions (counts III and IV) should be overturned because the trial court failed to give a unanimity instruction. The State concedes that it failed to present evidence supporting each alternative means of witness tampering, but it contends that the lack of a unanimity instruction was harmless because the prosecutor presented substantial evidence of only two means for count III (asking Pappas to absent herself from the proceeding and withhold information from the prosecutor) and one means for count IV (asking Attouf to withhold information).

¶16 There are three alternative means of committing witness tampering—attempting to induce a person to (1) testify falsely or withhold testimony, (2) absent him- or herself from an official proceeding, or (3) withhold informa-

tion from a law enforcement agency. RCW 9A.72.120(1)(a)-(c). For both count III and count IV, all three alternatives were charged and included in the jury instructions. On count III, we agree with the State that substantial evidence and argument was provided on two of the three alternative means. However, on count IV, substantial evidence was presented only on one means (withholding information) but the prosecutor referred to an alternative means (absenting herself from the proceeding).

¶17 Criminal defendants in Washington have a right to a unanimous jury verdict. WASH. CONST. art. I, § 21. This right includes the right to an expressly unanimous *verdict*. Wash. Const. art. I, § 21 states: "The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases. . . ." Allowing juries of less than 12 in courts not of record creates a right to 12-member juries in courts of record. *City of Seattle v. Filson*, 98 Wn.2d 66, 70, 653 P.2d 608 (1982), *overruled on other grounds by In re Eng*, 113 Wn.2d 178, 776 P.2d 1336 (1989). Additionally, by allowing juries of nine or more only in civil cases, the final clause implicitly recognizes a unanimous verdict requirement in criminal cases. *State v. Stephens*, 93 Wn.2d 186, 190, 607 P.2d 304 (1980); *see also State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988); *State v. Workman*, 66 Wash. 292, 294-95, 119 P. 751 (1911). In certain situations, the right to a unanimous jury trial also includes the right to express jury unanimity on the *means* by which the defendant is found to have committed the crime. *State v. Green*, 94 Wn.2d 216, 230-35, 616 P.2d 628 (1980); *accord State v. Whitney*, 108 Wn.2d 506, 511, 739 P.2d 1150 (1987); *State v. Franco*, 96 Wn.2d 816, 823, 639 P.2d 1320 (1982); *State v. Simon*, 64 Wn. App. 948, 961, 831 P.2d 139 (1991).

¶18 Washington jurisprudence has produced two distinct lines of analysis regarding the jury unanimity requirement. In one group of cases, unanimity is presumed so long as it is clear that the verdict was based on only one of the

alternative means (and substantial evidence supported that means). *See State v. Rivas*, 97 Wn. App. 349, 351-52, 984 P.2d 432 (1999) (upholding verdict where evidence was presented on only one of three alternative means), *overruled on other grounds by State v. Smith*, 159 Wn.2d 778, 787, 154 P.3d 873 (2007); *State v. Bland*, 71 Wn. App. 345, 354, 860 P.2d 1046 (1993), *overruled on other grounds by Smith*, 159 Wn.2d at 787.

¶19 In a second group of cases, unanimity is required as to guilt, but not as to the means by which the crime was committed, so long as substantial evidence supports each alternative means charged. *Kitchen*, 110 Wn.2d at 410-11. The *Kitchen* court stated that when reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt. *Kitchen*, 110 Wn.2d at 410. However, in previous cases, the court generally required unanimity as to both the crime committed and the means of commission. *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994); *see Whitney*, 108 Wn.2d 506; *Green*, 94 Wn.2d 216. In both *Ortega-Martinez* and *Whitney*, sufficient evidence existed of multiple means, and the trial court did not specifically instruct the jury that it was required to be unanimous as to means. Nevertheless, the reviewing court did not reverse for a lack of unanimity—not because unanimity as to means was not required, but because unanimity as to the means could be inferred from the evidence presented and the general unanimity instruction.

¶20 Thus in *Ortega-Martinez*, we find the following language:

> If the evidence is *sufficient* to support each of the alternative means submitted to the jury, a particularized expression of unanimity as to the means by which the defendant committed the crime is *unnecessary to affirm a conviction because we infer that the jury rested its decision on a unanimous finding as to the means.*

*Ortega-Martinez*, 124 Wn.2d at 707-08 (second emphasis added) (citing *Whitney*, 108 Wn.2d at 512; *Franco*, 96 Wn.2d at 823; *State v. Arndt*, 87 Wn.2d 374, 377, 553 P.2d 1328 (1976)).

¶21 Also, in *Whitney*, the court quoted with approval the Ninth Circuit decision in *Payseno*, which concluded that " '[n]ormally, a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications form the basis of the guilty verdict.' " *Whitney*, 108 Wn.2d at 512 (quoting *United States v. Payseno*, 782 F.2d 832, 835 (9th Cir. 1986)); *see also United States v. Schiff*, 801 F.2d 108, 114 (2d Cir. 1986); *United States v. Frazin*, 780 F.2d 1461, 1468 (9th Cir. 1986); *United States v. Ferris*, 719 F.2d 1405, 1407 (9th Cir. 1983); *United States v. Murray*, 618 F.2d 892, 898 (2d Cir. 1980).

¶22 Thus, the law has moved from an inference of unanimity as to means only where each means is supported by substantial evidence to a bright line rule that "[u]nanimity is not required . . . as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means." *Kitchen*, 110 Wn.2d at 410. In sum, where there are three alternative means of committing a crime and the jury is instructed on all three, either (1) substantial evidence must support each alternative means on which evidence or argument was presented or (2) evidence and argument must have been presented on only one means.

¶23 Here, both the charging documents and the jury instructions included all three alternative means but the State failed to present evidence that (1) Lobe attempted to persuade Pappas to testify falsely (relating to count III) or (2) Lobe attempted to convince Attouf to absent herself or testify falsely (relating to count IV). The State concedes that it failed to present evidence supporting each alternative means of witness tampering, but it contends that this error was harmless because the prosecutor presented only two means for count III (tampering with Pappas) and one means for count IV (tampering with Attouf).

¶24 When arguing count III (witness tampering against Pappas), the State presented evidence that Lobe both attempted to persuade Pappas to absent herself from the proceedings and attempted to persuade her to have her acquaintance withhold her contact information from investigators. Sufficient evidence supported both of these means, but no evidence or argument was presented as to the third means charged and described in the jury instructions (asking Pappas to testify falsely). Thus, in order to affirm the conviction, we would be required to both (1) find unanimity based on the substantial evidence supporting each of two alternative means and (2) presume that the jury relied only on the alternatives for which evidence was presented. In other words, the State in this one count is invoking two different presumptions to establish unanimity. In the context of a case where the jury was also improperly instructed on another similar count and where simple changes in the jury instructions could have avoided the error, we find there is too unstable a foundation to permit us to affirm the conviction.

¶25 Similarly, the probability of jury confusion and lack of unanimity is too great to permit us to affirm Lobe's conviction on count IV (witness tampering against Attouf). The evidence was sufficient to support only a conclusion that Lobe attempted to persuade Attouf to withhold information (Pappas's contact information). However, the prosecutor also stated that Lobe "repeat[ed] over and over and over again to Ericka [Attouf], [y]ou don't show up in court. You don't show up in court." RP at 193-94. To be fair, this appeared to be unintentional—a few sentences later, he refers to "Tara" (Pappas) as the person Lobe ordered to stay away from court. RP at 194. He did not, at any other time, make a statement indicating that Lobe had ordered Attouf to absent herself from the proceedings but instead repeatedly argued that Lobe ordered Attouf to withhold information from the prosecution. Nevertheless, this brief argument advancing a second alternative means may have been what some jurors relied on when convicting Lobe on count

IV. Without a limiting instruction, we cannot be sure of jury unanimity and we must reverse.

### III. Statement of Additional Grounds Issues

¶26 Lobe also raises additional arguments in his statement of additional grounds, but none of these arguments are persuasive. Because we reverse based on the lack of unanimity, above, we decline to address these additional arguments.

¶27 We reverse.

Armstrong, J., concurs.

¶28 Hunt, J. (dissenting) — I respectfully dissent from the majority's reversal of counts III and IV, the two witness-tampering convictions that David Lobe challenges in this appeal. I would find the lack of an alternative-means unanimity instruction to be harmless error, and I would affirm.

¶29 As the majority acknowledges, the law is well settled that we may affirm a jury's verdict if (1) we can determine that the verdict was based on only one of several alternative means, and (2) substantial evidence supports that one means, even if (3) substantial evidence does not support one or more other alternative means mentioned in the jury instructions, so long as (4) there is no danger that the jury based its guilty verdict on the unsupported alternative means. Where there was evidence of only one means, there is no such danger. *State v. Johnson*, 132 Wn. App. 400, 410, 132 P.3d 737 (2006) (reviewing court upheld burglary conviction where it could determine that jury's verdict was based on only one means, supported by substantial evidence); *State v. Rivas*, 97 Wn. App. 349, 351-52, 984 P.2d 432 (1999), *review denied*, 140 Wn.2d 1013 (2000), *overruled on other grounds by State v. Smith*, 159 Wn.2d 778, 154 P.3d 873 (2007) (reviewing court upheld assault conviction, finding no danger jury's verdict rested on an unsupported alternative means).

¶30 The issue before us here, however, is whether we can extend this *Johnson/Rivas* rationale and affirm where there

is substantial evidence of each of two alternative means of committing a crime and there was no evidence presented or argument made that the defendant committed the crime by a third alternative means, improperly included in the to-convict instruction, unaccompanied by an alternative-means unanimity instruction. I have found no published Washington cases addressing this apparent issue of first impression. I would extend the *Johnson/Rivas* rationale to the circumstances here.

## I. NO RISK OF LACK OF JURY UNANIMITY, COUNT III

¶31 As the majority notes, (1) the State presented evidence of and argued two alternative means by which Lobe committed count III, witness tampering; (2) we do not know whether the jury based its count III conviction on one or both alternative means presented; (3) the trial court erred in failing to instruct the jury that in order to convict, they must be unanimous as to the means by which Lobe committed count III; and (4) we generally presume that such error was prejudicial. In my view, however, the existence of substantial uncontroverted evidence of both alternative means presented overcomes this presumption of prejudice because there is no danger that the jury was not unanimous about both means. *Johnson*, 132 Wn. App. 400. Therefore, as the State argues, we should hold that the instructional error was harmless.

### A. *Rivas* and *Johnson*

¶32 The majority relies on cases, such as *Rivas*, finding harmless error and affirming convictions, even though substantial evidence was lacking on one or more alternative means, where it was clear that the juries based their verdicts on only one of the alternative means, which substantial evidence did support. The majority then distinguishes Lobe's case by finding it significant that the State presented evidence of and argued two, instead of only one, of three charged alternative means by which Lobe intimi-

dated a witness. The majority finds this distinction to be dispositive. I respectfully disagree.

¶33 I acknowledge that the *Rivas* and *Johnson* cases affirmed convictions where there was substantial evidence of only *one* of several alternative means. Nevertheless, that the *Rivas* and *Johnson* opinions use language describing substantial evidence of a *single* means does not defeat their rationales' applicability to cases involving substantial evidence of more than one alternative means. Thus, I see no reason not to extend the *Rivas* and *Johnson* rationales to the facts here, so long as the reviewing court can reach the same conclusion that the *Rivas* and *Johnson* courts reached: There is no danger that the jury based its guilty verdict on the unsupported alternative means where there is substantial, uncontroverted evidence of the charged alternative means (here, two of three), and where the State did not present the remaining charged means to the jury. Accordingly, I would hold that there is no danger the jury was not unanimous in its finding Lobe guilty based on the two presented and uncontroverted alternative means.

¶34 As Division One of our court noted in the majority's cited case, *State v. Rivas*:

> Jury verdicts in criminal cases must be unanimous as to the defendant's guilt of the crime charged. When the crime charged can be established by alternative means, *jury unanimity as to the means is assured as long as substantial evidence supports each alternative means.*

97 Wn. App. at 351 (emphasis added) (footnote omitted). It is significant here that, even though in *Rivas* the State presented evidence of only one of three alternative means, the *Rivas* court did not limit its holding to single-alternative circumstances. On the contrary, the italicized language above invites application of the *Rivas* rationale and holding to cases involving verdicts based on more than one presented alternative means, so long as "substantial evidence supports *each* alternative means." *Id.* (emphasis added).

¶35 Thus, rather than distinguishing *Rivas* and *Johnson*, as does the majority, I would apply their rationales to affirm

Lobe's witness-tampering conviction because there is substantial evidence to support each of the two alternative means presented to the jury and no real danger that the jury was not unanimous as to both of these means, especially since this evidence was uncontroverted.

## B. Applicability of *Rivas* to Lobe's To-Convict Instruction

¶36 In my view, extension of the *Rivas* rationale is even more compelling here because, although all three alternative means were included in the to-convict instruction, neither of the two alternative means presented to the jury was controverted in any way. The to-convict instruction, number 13, followed the statutory definition of "witness tampering,"[2] as follows:

### Instruction No. 13

To convict the defendant of the crime of tampering with a witness, as charged in count III, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 21st day of July, 2005, the defendant attempted to induce a person, Tara Pappas, to testify falsely or, without right or privilege to do so, withhold testimony or absent himself or herself from any official proceeding or withhold from a law enforcement agency information which he or she had relevant to a criminal investigation; and

(2) That the other person was a witness or a person the defendant had reason to believe was about to be called as a witness in any official proceedings or a person whom the defendant had reason to believe might have information relevant to a criminal investigation; and

(3) That the acts occurred in the State of Washington.

Clerk's Papers (CP) at 86.

¶37 It is undisputed that the State presented no evidence whatsoever of the first alternative means in this to-convict instruction—that Lobe "attempted to induce a

---

[2] RCW 9A.72.120(1)(a)-(c).

person, Tara Pappas, to testify falsely." CP at 86. In contrast, the State presented ample uncontroverted evidence of the second means of committing witness tampering in the to-convict instruction—that Lobe attempted to induce Pappas to "withhold testimony or absent . . . herself from any official proceeding." Pappas testified that Lobe repeatedly encouraged her not to appear in court until he was finally able to persuade her to agree not to testify. Pappas's testimony on this point was uncontroverted.

¶38 As to the third means—that Lobe attempted to induce Pappas to "withhold from a law enforcement agency information which he or she had relevant to a criminal investigation"—there was also substantial testimony from Pappas that Lobe attempted to induce her to withhold her address and phone number from law enforcement. CP at 86. Pappas's testimony on this point was also uncontroverted.

¶39 The evidence here was sufficient for a rational trier of fact to find both alternative means for committing count III proven beyond a reasonable doubt. As the majority notes, the State's evidence and argument focused exclusively on only two means: Lobe's persuading Pappas not to appear in court to testify about anything (as distinguished from trying to persuade her to testify falsely, the first means) and his attempts to persuade her to withhold information. In short, the State never argued or attempted to prove to the jury that Lobe tried to persuade Pappas to say anything false; instead, the State argued and proved beyond a reasonable doubt that Lobe wanted Pappas to say *nothing* that would incriminate him, in or out of court.

¶40 Under the circumstances of Lobe's case, the jury could have based its guilty verdict on count III witness tampering only on the sufficient and uncontroverted evidence presented on the two alternative means of witness tampering: attempting to persuade a witness (1) to withhold information and (2) to refuse to testify at trial. Conversely, there was no danger that the jury based its verdict on the unsupported means of attempting to persuade the witness to testify falsely. *See Rivas*, 97 Wn. App.

at 351-52. Thus, I would hold that the lack of unanimity instruction was harmless error and I would affirm Lobe's conviction on count III.

## II. Only One "Alternative Means," Count IV

¶41 The majority reverses count IV on grounds of "probable jury confusion" and lack of unanimity, even though it acknowledges that the State presented evidence of only one means of witness tampering on this count—that Lobe repeatedly ordered Erika Attouf to withhold Pappas's contact information from law enforcement. As with count III, I would hold that there is no danger of a lack of jury unanimity on the elements of count IV.

### A. Substantial Evidence of Single Means

¶42 The State acknowledges it did not present evidence supporting each alternative means charged for count IV. Instead, the State submitted evidence of, and the prosecutor limited his closing argument to, a single charged means—that Lobe attempted to persuade witness Attouf to withhold information from the authorities. As was the case with the evidence supporting count III, this evidence of count IV was uncontroverted.

¶43 Because the State proved and argued only one means of committing count IV, there was no danger that the jury convicted Lobe on any other alternative means. Therefore, the trial court's error in failing to instruct the jury that they must be unanimous as to the means Lobe employed to commit count IV was harmless. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985); *see also Rivas*, 97 Wn. App. 349; *Johnson*, 132 Wn. App. 400.

### B. No Jury Confusion

¶44 The majority also raises the specter of "jury confusion." As the majority notes, the prosecutor misspoke dur-

ing closing argument when he referred to Lobe's "repeat-[ing] over and over again to *Ericka* [*Attouf*], 'You don't show up in court. You don't show up in court,'" Report of Proceedings at 193-94, when the prosecutor meant to say, "*Tara* [*Pappas*]." (Emphasis added.) Soon thereafter, however, the prosecutor recognized that he had inadvertently transposed the names of the two victims in counts III and IV, corrected himself, and correctly referred to "Tara" (Pappas) as the person Lobe had ordered to stay away from court.

¶45 I respectfully disagree with the majority that this inadvertent and quickly corrected comment would have confused the jury. I see no basis in the record for such speculation. Moreover, the trial court could have interjected a curative instruction had Lobe so requested or had the court deemed such instruction necessary to correct any possible jury confusion. Deferring to the wisdom and discretion of the trial court, I would hold this remark to have been inconsequential and, therefore, harmless. Thus, I would also affirm Lobe's conviction on count IV.