IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>          v.<br><br>JAMES EDWIN MULLINS,<br><br>                    Appellant. | No. 79677-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — James Mullins appeals his conviction upon retrial for tampering with a witness. He asserts that the evidence was insufficient for a jury to find him guilty. He further asserts that the trial court erred by denying his right to present a defense, denying his right to a unanimous jury, violating his right to bail, and denying him the opportunity to seek appellate discretionary review. And in a statement of additional grounds, Mullins asserts the existence of spousal privilege as a defense to the crime. Finding no error, we affirm.

FACTS

On May 9, 2014, James Mullins shot and killed Lazaro Lopez. The only eyewitness to the shooting was Lopez's sister Norma Silver, who had been in a relationship with Mullins for over 25 years. The relationship was an abusive one.

At the time of the shooting, Mullins and Silver were staying with Mullins' mother in Federal Way. Silver stayed up all night cleaning because Mullins' brother was expected to visit that day. In the morning, Mullins scolded Silver because he felt she had not done much. Shortly thereafter, Lopez arrived and

Citations and pin cites are based on the Westlaw online version of the cited material.

asked to see Silver. This angered Mullins. Mullins berated Lopez for showing up early in the morning. Mullins, who was angry at Lopez for previously stating that the death of Silver's teenage son was God's will, prodded Lopez about Lopez's son's cancer by asking if it was God's will. Silver told Mullins that she was done with their relationship and that she was leaving with Lopez. Lopez put his hand on Mullins' shoulder, told Mullins to restrain himself, and smacked him on the cheek to get him to "snap . . . out of [it]." Mullins pulled Lopez to the ground, and they wrestled. When Lopez got up and stepped back, Mullins pulled out a gun and shot him. Mullins turned to Silver and said, "[Y]ou saw that it was self-defense." Silver responded that it was not self-defense, and Mullins said, "[W]ell, then I'm done for."

The State charged Mullins in an amended information with murder in the second degree. Mullins, in violation of a no-contact order, subsequently sent four letters to Silver which formed the basis for an additional charge of witness tampering. Prior to trial, Mullins moved to assert a claim of spousal testimonial privilege to preclude Silver from testifying against him and to dismiss the witness tampering charge. The court denied Mullins' motion. At the close of the State's evidence, Mullins moved to dismiss the witness tampering charge based on insufficient evidence or, in the alternative, to introduce evidence regarding the existence of spousal privilege. The court denied Mullins' motion to dismiss and denied any evidence of spousal privilege beyond one question regarding what Mullins considered his relationship with Silver to be.

At trial, Silver testified that Mullins did not act in self-defense. Mullins testified in his own defense. He admitted shooting Lopez but claimed that Lopez was trying to kill him and that he aimed at Lopez's leg in self-defense. Mullins further testified that the letters were intended to provide Silver with emotional support, not to prevent her from testifying.

A jury convicted Mullins as charged. This court reversed his convictions on appeal and remanded for a new trial. On December 18, 2018, a second jury acquitted Mullins of murder in the second degree but found him guilty of witness tampering.[1] The court granted Mullins' request for immediate release because he had served all the time a standard range witness tampering charge would entail. Mullins appeals.

ANALYSIS

Sufficiency of the Evidence

Mullins argues that the evidence was insufficient to support his conviction for tampering with a witness. We review a claim of insufficient evidence for "whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." State v. Wentz, 149 Wn.2d 342, 347, 68 P.3d 282 (2003). An appellant challenging the sufficiency of the evidence admits the truth of the State's evidence. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence

---

[1] By special verdict, the jury rejected Mullins' self-defense claim.

is no less reliable than direct evidence.  State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).  We defer to the trier of fact on issues of witness credibility. Witherspoon, 180 Wn.2d at 883.

Witness tampering is a crime that may be committed by three alternative means: attempting to induce a person to (1) testify falsely or withhold testimony without privilege to do so, (2) absent himself or herself from an official proceeding, or (3) withhold information from a law enforcement agency. RCW 9A.72.120(1)(a)-(c); State v. Lobe, 140 Wn. App. 897, 902-03, 167 P.3d 627 (2007).  Here, the jury was instructed that to convict Mullins of witness tampering, it needed to find beyond a reasonable doubt that he "attempted to induce a person to testify falsely or, without right or privilege to do so, withhold any testimony, or absent himself or herself from any official proceeding."

Mullins contends that the State failed to present evidence on the alternative means that he attempted to induce Silver to "testify falsely or, without right or privilege to do so, withhold any testimony."[2]  To the contrary, he asserts that the letters he sent to Silver show that he repeatedly asked Silver to tell the truth and expressed concerns that testifying falsely could constitute perjury.  We disagree.  Although Mullins never expressly instructed Silver to lie, the letters demonstrate that Mullins attempted to persuade her to go along with his version of the facts by referencing their religious beliefs and proclaiming his love for her while repeatedly asserting that he acted in self-defense, claiming that she did not

---

[2] Mullins concedes that a rational juror could have concluded that he attempted to induce Silver to absent herself from court proceedings, contrary to RCW 9A.72.120(1)(b).

witness the incident, and declaring that she was his common law wife. In addition, Mullins insinuated that Silver would benefit by testifying in his favor or suffer consequences if she did not. For example, in one letter, Mullins included an advertisement for a $22,000 Silverado pickup truck along with the statement: "Would Norma like a New Pick-up? She only has to tell the truth and write to me!" In another letter, Mullins asserted that Silver would be guilty of several felonies if she was not his wife and stated, "I pray my wife will not testify and endanger herself by tricks which would catch her being inaccurate and getting a perjury charge." Viewing this evidence in the light most favorable to the State, a rational trier of fact could find that Mullins was attempting to persuade Silver to lie for him.

Mullins further argues that due process required the State to introduce evidence at trial to affirmatively prove that he was "without right or privilege" to withhold Silver's testimony. Mullins is incorrect. The spousal testimonial privilege prevents one spouse from being examined as a witness for or against the other spouse without consent. RCW 5.60.060(1). Under ER 104(a), "preliminary questions concerning . . . the existence of a privilege . . . shall be determined by the court." Here, prior to trial, Mullins asserted the privilege and claimed that Silver could not testify against him because she was his common law wife. After stating that the existence of the privilege was a legal issue, the court ruled that it did not exist in Mullins' case. As a result, Silver testified at trial against Mullins. Given the fact that Silver testified at trial, in addition to language in the letters indicating that Mullins sought to persuade Silver of the existence of

a common law marriage, a rational jury could find that Mullins had no right or privilege to prevent Silver from testifying.

## Right To Present a Defense

Mullins argues that the trial court violated his constitutional right to present a defense when it denied his request to introduce evidence and argument at trial that he believed Silver was his common law wife. This court reviews an alleged denial of the constitutional right to present a defense de novo. State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

The Sixth Amendment to the United States Constitution and article I, § 22 of the Washington Constitution guarantee the right to present a defense. State v. Burnam, 4 Wn. App. 2d 368, 375-76, 421 P.3d 977, review denied, 192 Wn.2d 1003 (2018). "'The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.'" Jones, 168 Wn.2d at 720 (quoting Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). However, the right is not absolute. "'The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" State v. Lizarraga, 191 Wn. App. 530, 553, 364 P.3d 810 (2015) (alteration in original) (quoting Taylor v. Illinois, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988)). "[A] defendant's interest in presenting relevant evidence may 'bow to accommodate other legitimate interests in the criminal trial process.'" Lizarraga, 191 Wn. App. at 553 (internal quotation marks omitted)

6

(quoting <u>United States v. Scheffer</u>, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998)).

Here, prior to trial, the court denied Mullins' motion to assert spousal privilege. Mullins' claim was based primarily on the alleged existence of a common law marriage in Idaho between Mullins and Silver. The court denied Mullins' motion, finding no credible evidence of a common law marriage or domestic partnership. Mullins has not challenged this ruling. Because the court had already ruled that no spousal privilege existed, evidence seeking to prove the alleged existence of the privilege was not relevant. "Defendants have a right to present only relevant evidence, with no constitutional right to present irrelevant evidence." <u>Jones</u>, 168 Wn.2d at 720 (emphasis omitted). The exclusion of such evidence did not violate Mullins' right to present a defense.

### Unanimous Jury

Mullins asserts that the trial court violated his constitutional right to be convicted by a unanimous jury because each of the four letters that formed the basis for his witness tampering conviction was a distinct criminal act and the State did not elect which one it was relying on to support the witness tampering charge. The State responds that a unanimity instruction was not required because the letters constituted a continual course of conduct. The State is correct.

We review the adequacy of jury instructions de novo. <u>State v. Pirtle</u>, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the

case, and properly inform the jury of applicable law when read as a whole. State v. Boyd, 137 Wn. App. 910, 922, 155 P.3d 188 (2007).

In an alternative means case, where a single offense may be committed in more than one way, the jury must be unanimous as to the act constituting the crime charged. State v. Petrich, 101 Wn.2d 566, 683 P.2d 173 (1984), overruled on other grounds by State v. Kitchen, 110 Wn.2d 403, 410, 756 P.2d 105 (1988)). "When the prosecution presents evidence of multiple acts of like misconduct, any one of which could form the basis of a count charged, either the State must elect which of such acts is relied upon for a conviction or the court must instruct the jury to agree on a specific criminal act." State v. Coleman, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007). However, no unanimity instruction is required when the evidence demonstrates a "continuing course of conduct" rather than several distinct acts. State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). "We use common sense to determine whether criminal conduct constitutes one continuing course of conduct or several distinct acts." State v. Lee, 12 Wn. App. 2d 378, 393, 460 P.3d 701, review denied, 195 Wn.2d 1032 (2020). "We evaluate whether the evidence shows conduct occurring at one place or at many places, within a brief or long period of time, to one or multiple different victims, and whether the conduct was intended to achieve a single or multiple different objectives." Lee, 12 Wn. App. 2d at 393 (footnote omitted).

Here, Mullins wrote each of the four letters to Silver from jail during a two-month period pending trial. Each letter had the same objective, which was to persuade Silver not to cooperate with the State in its prosecution of Mullins for

8

second degree murder. When viewed in a common sense matter, these multiple acts formed a continual course of conduct. No unanimity instruction was required.

## Right to Bail

Mullins asserts that the trial court violated his constitutional right to bail following reversal of his convictions on appeal and remand for retrial.[3] He concedes that the issue is moot because the trial court released him immediately after the jury acquitted him of second degree murder. He nevertheless contends that this court should review the issue because the circumstances present a matter of continuing and substantial public interest. We disagree.

An issue is technically moot if the appellate court can no longer provide effective relief. State v. Hunley, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). An appellate court may nevertheless review a moot issue if it presents a matter of "continuing and substantial public interest." State v. Beaver, 184 Wn.2d 321, 330, 358 P.3d 385 (2015). In making this determination, we consider three factors: "'[(1)] the public or private nature of the question presented, [(2)] the desirability of an authoritative determination for the future guidance of public officers, and [(3)] the likelihood of future recurrence of the question.'" Hunley, 175 Wn.2d at 907 (alterations in original) (internal quotation marks omitted) (quoting In re Pers. Restraint of Mattson, 166 Wn.2d 730, 736, 214 P.3d 141

---

[3] Article I, section 20 of the Washington State Constitution provides that "[a]ll persons charged with crime shall be bailable by sufficient sureties, except for capital offenses when the proof is evident, or the presumption great."

(2009)). "This exception is not used in cases that are limited to their specific facts." Beaver, 184 Wn.2d at 331.

A review of the record indicates that the circumstances Mullins now challenges were fact-specific and unlikely to recur. Following Mullins' preliminary hearing and finding of probable cause in 2014, bail on the second degree murder charge was set at $1,000,000 cash or surety bond. After this court reversed and remanded his convictions for a new trial, a transport order directing that Mullins be transported from the Department of Corrections (DOC) to the King County Correctional Facility was entered on March 28, 2018. From April through October 2018, Mullins appeared in court multiple times but did not request a bail hearing. At an omnibus hearing on October 12, 2018, the prosecutor noted that when Mullins was transported back from DOC on remand, he was "booked into jail on a no bail warrant, DOC hold." The prosecutor therefore asked the court to reinstate bail at $1,000,000.[4] Mullins objected to any bail being set. The court signed an order reinstating bail and allowing Mullins to request a different amount at a bond hearing.

A few days prior to trial, Mullins filed a motion to strike language in the transport order indicating that he was to be returned to DOC after his case was over. The prosecutor explained that Mullins was being held solely on the murder charge, not on the DOC transport order. On this basis, the court denied Mullins' motion because the problem had been resolved and it appeared the State had

---

[4] There is no DOC warrant in the record. The prosecutor likely was referencing the transport order.

not acted in bad faith. After Mullins was acquitted on the murder charge and found guilty of witness tampering, the court granted his motion for immediate release because he had served time beyond that required for a standard range sentence on the latter charge.

Although there appears to have been some confusion regarding the effect of the transport order, there is no indication that the situation is likely to recur. Moreover, the record does not support Mullins' assertion that the court denied him any opportunity for bail from April through October 2018. Mullins never moved for reconsideration of bail after his preliminary appearance as provided by CrR 3.2(j)(1). And nothing in the transport order restricted Mullins from requesting or posting bail. Judicial review of this moot issue is unwarranted.

<u>Discretionary Review</u>

Mullins argues that the trial court erred by denying him the opportunity to seek discretionary review of its pretrial ruling concluding that he failed to establish that Silver was his common law wife. After the trial court issued its ruling, Mullins stated, "I'd like to appeal this thing." Defense counsel informed the court that he was not retained to represent Mullins in an interlocutory appeal and questioned whether the issue met the requirements for discretionary review. He nevertheless requested a stay of the proceedings to allow Mullins to pursue an interlocutory appeal under RAP 2.3.[5] The court ruled that "the standard is [not]

---

[5] Under RAP 2.3(a)-(c), the appellate court may grant discretionary review if the superior court has committed an "obvious error," a "probable error [which] . . . substantially alters the status quo," or "has so far departed from the accepted and usual course of judicial proceedings . . . as to call for review by the appellate court."

met under RAP 2.3 in terms of staying these proceedings and allowing an interlocutory appeal." The court noted that Mullins retained the right to challenge the pretrial ruling on appeal.

Mullins does not disagree that the court had discretion to refuse his request for a stay pending discretionary review. Rather, he asserts that the trial court lacked authority to unilaterally deny him the opportunity to seek discretionary review. Mullins concedes that the issue is moot given that he did not challenge the trial court's denial of his spousal privilege motion on appeal, but asks this court to review the issue as a matter of continuing and substantial public importance. The record does not support Mullins' claim. The trial court did not bar Mullins from seeking discretionary review or purport to divert this court of the power to decide whether discretionary review was warranted. Rather, the court indicated that a stay was not warranted because it did not see any legitimate basis for discretionary review under RAP 2.3(b).

<u>Statement of Additional Grounds</u>

Mullins first asserts that credible evidence supported the existence of an Idaho-based common law marriage with Silver. He cites <u>State v. Denton</u>, 97 Wn. App. 267, 270-71, 983 P.2d 693 (1999), in support of the proposition that failure to procure a marriage license does not invalidate a ceremonial marriage. But the trial court found Mullins' testimony regarding the existence of a common law marriage not credible. It further found credible Silver's testimony indicating that she never agreed to be married to Mullins. Such determinations are for the trier

of fact and are not subject to review.  State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).  Mullins further asserts the existence of a legally valid Native American marriage.  Mullins provides no evidence or authority in support of this assertion.

Mullins next claims that the trial court was judicially estopped from concluding that no common law marriage existed because a Washington court in 2001 agreed that he and Silver were married.  But the trial court judge considered this evidence and gave it little or no weight because there was no evidence that a judge "made a considered decision on that issue that would be binding on this court."  Mullins provides no evidence indicating that this ruling was in error.

Mullins further argues that he was illegally held for seven months without opportunity for a bail hearing, thereby preventing him from obtaining more evidence that would have proved the existence of a common law marriage.  He asserts that the prosecutor deliberately entered false information into the King County Correctional Facility computer about the reason he was being held in King County Correctional Facility in order to prevent him from obtaining a bail hearing.  The record does not support this assertion.

Affirmed.

_____

WE CONCUR:

_____     _____

13