# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67867-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JERAMIE DAVID OWENS, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 29, 2013 |

GROSSE, J. — Where the State charges an alternative means crime, the trial court instructs the jury on each means, and no way exists to determine which means served as the basis for the conviction, sufficient evidence must support each means. Because the State did not meet this burden, we reverse Jeramie Owens's conviction for first degree trafficking in stolen property. In all other respects, we affirm.

## FACTS

On July 2, 2010, Michael Cassida was working as a salesman at Motor City, a used car dealership in Mount Vernon, Washington, when Owens and another man expressed interest in a solid blue 1967 Volkswagen Beetle with a high-performance engine and a surfboard attached to a roof rack. Owens closely examined the car's frame, engine compartment and interior and even crawled underneath the body. Cassida accompanied Owens on a short test drive of the car. Owens told Cassida that he restored Volkswagens for a living and even had a tattoo that said "Volkswagen" on his back. Owens and Cassida drove back to the dealership and Owens said he would get in touch.

The next morning, when Cassida was opening the dealership for business, he noticed that a lock on the fence had been cut and the 1967 Beetle, which had

been parked at the edge of the lot, was missing. Cassida also noticed the ignition key for the Beetle was missing from his key ring.

On July 6, 2010, Owens filed an application with the Department of Licensing for title to a black 1971 Volkswagen.

On July 28, 2010, Owens posted a Craigslist advertisement for a "1971 Volkswagen Beetle." The "1971 Beetle" was painted blue and white and did not have a high-performance engine, a roof rack or a surfboard. Craig Sauvageau responded to the advertisement, went to Owens's address, and agreed to purchase the Beetle for $2,800. Owens claimed he had lost the title to the Beetle but had completed an affidavit of lost title which Sauvageau could present to the Department of Licensing to obtain a new title.

On August 3, 2010, Sauvageau brought the Beetle to Conaway Motors, a repair shop specializing in European automobiles, for a tune-up. A mechanic, Alberto Ruiz, noticed that the rivets attaching the public VIN[1] plate were not fastened tightly and were shiny and new despite the fact that the Beetle was approximately 40 years old. Based on this fact, Ruiz believed that the original public VIN plate had been removed and another VIN plate put on. Ruiz also knew that the Beetle could not be from the 1971 model year because 1971 parts did not fit.

---

[1] "VIN" stands for "vehicle identification number," a number that uniquely identifies an automobile. Most cars have both a "public" VIN, which is stamped on a metal plate that is affixed to a visible location such as the dashboard, and a "confidential" VIN, which is stamped in a hidden location determined by the car's manufacturer.

Detective Paul Ryan of the Monroe Police Department and the Snohomish County Auto Theft Task Force was called to investigate. Detective Ryan located the Beetle's confidential VIN and determined that it did not match the public VIN, but that it did match the VIN for the 1967 Beetle stolen from Motor City. The public VIN matched the 1971 Volkswagen to which Owens obtained title on July 6, 2010.

Searching online using the phone number Owens gave Sauvageau, Detective Ryan discovered other Craigslist advertisements posted by Owens. One of the advertisements was for a yellow 1956 Beetle with a roof rack and the identical type of high-performance engine missing from Motor City's 1967 Beetle. On that basis, Detective Ryan obtained a search warrant for Owens's property. In Owens's garage, officers found a rivet gun, a paint sprayer, and the surfboard from the 1967 Beetle. Owens admitted that the 1967 Beetle he sold to Sauvageau was the same Beetle that he test-drove at Motor City on July 2. He claimed he bought the Beetle from a private seller on Craigslist, but could not provide any information about the purchase. The Department of Licensing had no bill of sale from Owens's purported purchase of the 1967 Beetle.

The State charged Owens with one count of possession of a stolen vehicle, one count of first degree trafficking in stolen property, and one count of first degree taking a motor vehicle without permission. The State later amended the information to include a charge of bail jumping after Owens failed to appear for a court hearing and a warrant was issued. A jury convicted Owens on the

possession, trafficking, and bail jumping charges but acquitted him of taking a motor vehicle. Owens timely appeals.

ANALYSIS

1.    Sufficiency of the Evidence

Owens makes several challenges to the sufficiency of the evidence. To evaluate a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt.[2] A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences must be drawn in favor of the State and interpreted against the defendant.[3] We defer to the trier of fact to weigh the evidence, resolve conflicts in testimony, and evaluate witness credibility.[4] Circumstantial evidence is no less reliable than direct evidence and is sufficient to prove any element of the crime.[5]

a.    First Degree Trafficking in Stolen Property

Owens contends that the crime of first degree trafficking in stolen property is an alternative means crime and the State failed to present sufficient evidence to support each of the means. We agree.

---

[2] State v. Wentz, 149 Wn.2d 342, 347, 68 P.2d 282 (2003).
[3] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[4] State v. Stewart, 141 Wn. App. 791, 795, 174 P.3d 111 (2007).
[5] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Criminal defendants have a right to an expressly unanimous jury verdict.[6] A general verdict of guilty on a crime that can be committed by alternative means will be upheld only if sufficient evidence supports each means.[7]

RCW 9A.82.050 provides that a person is guilty of first degree trafficking in stolen property "who knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property." This definition identifies eight alternative means of committing the offense: knowingly (1) initiating, (2) organizing, (3) planning, (4) financing, (5) directing, (6) managing, or (7) supervising the theft of property for sale to others, or (8) knowingly trafficking in stolen property.[8]

Owens argues that the State failed to present substantial evidence supporting at least one of the alternative means of first degree trafficking in stolen property, specifically: that Owens "supervised" the theft of the 1967 Beetle. As this court relied upon in Strohm, the definition of "supervise" is "to coordinate, direct, and inspect continuously and at first hand the accomplishment of: oversee with the powers of direction and decision the implementation of one's own or another's intentions."[9] Inherent in the definition of "supervise" is the involvement of another

---

[6] WASH. CONST. art. I, § 21; State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994).
[7] Ortega-Martinez, 124 Wn.2d at 708.
[8] State v. Strohm, 75 Wn. App. 301, 307, 879 P.2d 962 (1994) (quoting RCW 9A.85.050(2)).
[9] Strohm, 75 Wn. App. at 305 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2296 (1986)).

person. Although the State presented testimony that Owens was accompanied by a friend at Motor City, there was no evidence that anyone other than Owens was involved in the theft or trafficking of the Beetle.

If one or more of the alternative means is not supported by substantial evidence, the verdict will stand only if we can determine that the "'verdict was based on only one of the alternative means and that substantial evidence supported that alternative means.'"[10] That is not possible here. The information charging Owens with first degree trafficking in stolen property listed the full statutory language and did not limit or specify a means. The trial court instructed the jury to consider all eight of the means.[11] The trial court did not instruct the jury that it must reach a unanimous agreement as to the alternative means, nor was there a special verdict form specifying the means relied upon. As a result, it is unclear based on the verdict alone which means the jury relied upon to support the

---

[10] State v. Howard, 127 Wn. App. 862, 872, 113 P.3d 511 (2005) (quoting State v. Rivas, 97 Wn. App. 349, 351-52, 984 P.2d 432 (1999)).

[11] There is no pattern instruction for first degree trafficking in stolen property. The "to convict" instruction for first degree trafficking in stolen property proposed by the State and given by the trial court read:

> To convict the defendant of the crime of Trafficking in Stolen Property in the First Degree, as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 28th day of July, 2010, the defendant did knowingly initiate, organize, plan, finance, direct, manage or supervise the theft of a motor vehicle for sale to others;
> (2) That the defendant did knowingly traffic in stolen property; and
> (3) That any of these acts occurred in Snohomish County.

conviction. Owens's first degree trafficking in stolen property conviction must be reversed.

### b. Possession of a Stolen Vehicle

To convict Owens of possession of a stolen vehicle, the State had to prove beyond a reasonable doubt that he knowingly possessed a stolen motor vehicle and that he knew the vehicle was stolen.[12] Owens contends that the State failed to present sufficient evidence of the "knowledge" element.[13]

Possession of stolen property alone does not create a presumption that the person knew the property was stolen, but that fact, together with "slight corroborative evidence of other inculpatory circumstances tending to show guilt" will support a conviction.[14] Examples of such corroborative evidence include the absence of a plausible explanation and flight.[15]

---

[12] RCW 9A.56.068(1), .140(1). RCW 9A.56.068(1) states that "[a] person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle." RCW 9A.56.140(1) defines possession of stolen property in part as "knowingly" receiving, retaining, possessing, concealing, or disposing of stolen property "knowing that it has been stolen." The jury was instructed that "[p]ossessing a stolen motor vehicle means knowingly to receive, retain, possess, conceal, or dispose of a stolen motor vehicle knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto."

[13] Owens also claims there was insufficient evidence of the "knowledge" element to support his first degree trafficking in stolen property conviction. Because we reverse that conviction, we do not address this issue, nor do we address his claim that the "to convict" instruction for first degree trafficking in stolen property relieved the State of the burden to prove knowledge.

[14] State v. Ford, 33 Wn. App. 788, 790, 658 P.2d 36 (1983).

[15] See, e.g., State v. Hudson, 56 Wn. App. 490, 495, 784 P.2d 533 (1990) ("[t]he absence of any explanation for [the defendant's] use of what appears to have

7

Here, viewing the evidence in the light most favorable to the State and drawing all reasonable inferences therefrom, the evidence was sufficient to sustain the conviction. The Beetle was stolen less than 24 hours after Owens test-drove it. A few days after the theft, Owens registered the title to a 1971 Volkswagen. Roughly three weeks later, Owens sold the stolen 1967 Beetle to Sauvageau. Owens misrepresented to Sauvageau that the car was actually a 1971 Beetle, despite the fact that Owens worked on Volkswagens for a living, was extremely knowledgeable about Volkswagens, and even had a Volkswagen tattoo stretching across his back. Owens told Sauvageau he had "lost" the title. The Beetle Owens sold to Sauvageau had a fake VIN plate that corresponded to the 1971 Volkswagen to which Owens registered title. The surfboard attached to the 1967 Beetle at Motor City was found in Owens's garage, as were a rivet gun and painting supplies. Owens admitted the car was the same one that he had test-driven at Motor City immediately before it was stolen. He claimed he bought it from a private individual on Craigslist but there was no evidence to support this claim. Prior to trial, Owens jumped bail. A rational jury could infer from the facts that Owens knew the 1967 Beetle was stolen and that he knowingly possessed it.

2.    Prosecutorial Misconduct

Owens contends that the deputy prosecutor committed misconduct by misstating the law regarding the element of knowledge. We review alleged

---

been a recently stolen automobile . . . and his flight provide ample evidence from which to infer guilty knowledge.").

8

misconduct in the context of the entire argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.[16] To prevail on a claim of prosecutorial misconduct, a defendant must show both improper conduct and prejudicial effect.[17] If the defendant failed to object to the misconduct at trial, appellate review is only appropriate if the prosecutorial misconduct is so "flagrant and ill intentioned" that no curative instruction could have obviated the prejudice engendered by the misconduct.[18]

"A person knows or acts knowingly or with knowledge when: (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense."[19] However, this definition "must be interpreted as only permitting, rather than directing, the jury to find that the defendant had knowledge if it finds that the ordinary person would have had knowledge under the circumstances."[20] In accordance with this interpretation, the jury was given the pattern instruction on "knowledge":

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance or result when he or she is aware of that fact, circumstance or result. It is not necessary that the person know

---

[16] State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).
[17] State v. Roberts, 142 Wn.2d 471, 533, 14 P.3d 713 (2000).
[18] State v. Emery, 174 Wn.2d 741, 761-62, 278 P.3d 653 (2012).
[19] RCW 9A.08.010(b)
[20] State v. Shipp, 93 Wn.2d 510, 516, 610 P.2d 1322 (1980).

that the fact, circumstance or result is defined by law as being unlawful or an element of a crime.

If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

When acting knowingly is required to establish an element of a crime, the element is also established if a person acts intentionally.[21]

Owens contends that the deputy prosecutor improperly instructed the jury that they were required to find that Owens knew the Beetle was stolen if a "reasonable person" would have done so.[22] We disagree. The deputy prosecutor correctly quoted the law, informing the jury that they were allowed to presume Owens's knowledge based on a "reasonable person" standard, but were not required to do so. The jury was so instructed, and we presume jurors follow the instructions they are given.[23]

Moreover, because Owens failed to object to the deputy prosecutor's statements, he must show that it was so "flagrant and ill intentioned" that no curative instruction could have obviated the prejudice. Owens does not show

---

[21] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02 (3d ed. 2008).

[22] Owens cites to the following portion of the State's closing argument:

Knowingly isn't a subjective standard. What that describes, if you look at the second paragraph on Instruction Number 6, "If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that she acted with knowledge."

The reasonable person standard is this. It's a reasonable person. It's an objective standard. It means, what would a common, everyday person say, Hey, this clearly is suspicious. It's not what was that person thinking, what was that specific person thinking. It's the general knowledge, what an average person should know.

[23] State v. Grisby, 97 Wn.2d 493, 509, 647 P.2d 6 (1982).

10

incurable prejudice. Even without the permissive inference, there was sufficient evidence from which the jury could find that Owens had actual, subjective knowledge that the Beetle was stolen. Owens attempted to resell the Beetle immediately after he claimed he purchased it; he misrepresented the model year to Sauvageau; and he could not explain how the Beetle came to possess a fraudulent VIN plate belonging to another Volkswagen he possessed. Accordingly, Owens fails to prove misconduct that undercuts the validity of the verdict.

We reverse and remand for resentencing, striking the first degree trafficking in stolen property conviction. We affirm Owens's remaining two convictions.

WE CONCUR: